Wallace L. SORENSON,
Plaintiff-Appellee,

v.

UNITED STATES of America,
Defendant-Appellant.

No. 74–1154.

United States Court of Appeals,
Ninth Circuit.

Aug. 21, 1975.

Rehearing Denied Nov. 7, 1975.

William A. Friedlander (argued), Tax Div., Dept. cf Justice, Washington, D. C., for defendant-appellant.

Warde H. Erwin (argued), Portland, Or., for plaintiff-appellee.

## OPINION

Before DUNIWAY and SNEED, Circuit Judges, and PLUMMER,* District Judge.

SNEED, Circuit Judge:

This is a suit for refund of a 100% civil penalty assessed under § 6672[1] of the Internal Revenue Code for willful failure to collect or truthfully account for and pay over employee withholding and FICA taxes. The Government counterclaimed for that portion of the penalty assessed but unpaid. The district court entered judgment for Sorenson and against the Government.

The record relates the sad tale of a man who began a small cabinetmaking business, incorporated as Regal Industries, Inc., with high hopes and who then watched that business devour his personal funds and ultimately drive him into bankruptcy. As Sorenson says of himself, "I just got on a tiger." As much as we sympathize with his plight we must add to his hardships by reversing the judgment of the district court.

Regal Industries, Inc. commenced operations in 1966. Regal filed accurate employee withholding returns for the first three quarters of 1966 but the returns for the second and third quarters were unaccompanied by payment. Regal failed and ceased operations by the end of the third quarter of 1966.

In 1971, the Internal Revenue Service assessed a 100% penalty of $4,646.40 against appellee as a responsible person under § 6672. Sorenson paid $331.20 of the assessment in 1972. His claim for refund was disallowed and this suit and counterclaim followed.

At the time of Regal's incorporation in February, 1966, Sorenson and Howard Collins were the sole stockholders of the corporation. Sorenson was the president of Regal and it was intended that he would have the responsibility for the financial and administrative affairs of the corporation. Collins, an experienced cabinetmaker, was to run production. Sorenson contributed $1,000 as initial capitalization and Collins contributed cabinetmaking tools.

Shortly after incorporation Regal entered into contracts to furnish cabinets for two large apartment houses. It quickly became obvious that the corporation was grossly undercapitalized and could not meet the production responsibilities it had assumed. By April Regal had become a financial disaster. At about this time Sorenson acquired Collins' shares and became the sole stockholder of the corporation.

The collapse of Regal was not accompanied by precise record keeping. Moreover, the passage of years between 1966 and the trial of this case in 1974 has also contributed to lost records and vague recollections. The statement of Regal's financial dealings which we give must therefore be sketchy and imprecise.

Among the initial efforts to keep the undercapitalized corporation afloat was a $9,000 bank loan secured by an assignment of accounts receivable. Pursuant to this assignment the income from the two apartment house contracts was paid to the bank, rather than to Regal. But the bank, having an interest in Regal's continuing performance of those contracts, entered into an arrangement to release some of the proceeds of the receivables to Regal. This arrangement

---

* Honorable Raymond E. Plummer, Senior United States District Judge, for the District of Alaska, sitting by designation.

1. § 6672. *Failure To Collect And Pay Over Tax, Or Attempt To Evade Or Defeat Tax.*

Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over. No penalty shall be imposed under section 6653 for any offense to which this section is applicable.

took the form of a "trust account." The bank, it appears, would deposit a portion of the proceeds from the receivables and these funds would then be used by Regal for the payment of wages, the purchase of materials, and other expenses. It is quite difficult to ascertain from the record the degree of control, if any, which Sorenson had over the disposition of this "trust account." Because reversal is indicated in this case by other considerations, we do not believe it is necessary to ascertain the degree of Sorenson's control over this account.

Other funds were available to meet certain of Regal's obligations. These consisted of contributions amounting to approximately $35,000 by Sorenson from his personal funds. It appears that the bulk of these funds were used to pay the salaries of employees and that the procedure employed was to deposit personal funds into the corporate account and then to draw corporate checks to the employees. Sorenson characterizes this financial arrangement as the making of a personal "loan" to the corporation and seems to take the position that there was no actual contribution to capital.

Sorenson's explanation for the failure to make withholding during the two quarters in question is that the corporation had no available funds for this purpose. Regal had no funds to meet its net payroll other than those provided by Sorenson to the corporation or those released from the "trust account." Even these sums were insufficient and the employees were paid "draws" on their salaries (e. g., 50%) rather than their full salaries. These circumstances led the district court to relieve Sorenson from liability under § 6672 as stated in the following Finding of Fact and a Conclusion of Law based thereon:

> 8. The court finds that at no time did the plaintiff have funds of the corporation under his control with which to pay any tax liability of the corporation; that plaintiff contributed money to the corporation from his own funds, and that all of the accounts receivable of the corporation were paid to the United States National Bank or its designee to pay specific obligations of the corporation, and that plaintiff had no control thereof.

\* \* \* \* \* \*

> 2. Since Regal Industries, Inc. had no funds at any time with which it could pay taxes, therefore, no creditors were preferred by payment and no liability for wilful failure to withhold, truthfully account for, or pay over to the government could arise against the plaintiff as a 100 percent penalty under Title 26 U.S.C. 6672. [R. 131–32].

■ To accept the trial court's Finding of Fact and Conclusion of Law, it would be necessary for us to hold that Sorenson's personal funds "never became funds of the corporation" or that, even if they did so become, such funds were never "under his control" for the purpose of paying a tax liability of the corporation. In our opinion, neither holding would be justified.

Sorenson's personal funds became "funds of the corporation" when they were used to pay net salaries of the employees of the corporation. We so hold. The fact that such funds were deposited to the corporate account and withdrawn therefrom by checks signed by Sorenson strengthens our conclusion but is not necessary to it. The use to which the funds were put, viz. the payment of corporate obligations, transformed Sorenson's personal funds into "funds of the corporation."

■ Moreover, we perceive no basis for holding that these "funds of the corporation" were not under Sorenson's control. The record is clear that Sorenson was the person with both the duty and responsibility to assure that withholding occurred with respect to salaries paid. Contemporaneously with the transformation of his funds into the "funds of the corporation" there came into existence "control" of such funds by him. To assert that because Sorenson used his own money to keep Regal afloat there existed no duty with respect to Regal "to collect, truthfully account for, and pay over"

withholding taxes within the meaning of section 6672 would permit the principal and managing shareholder of such a closely held corporation to immunize both it and himself from all withholding responsibility. We cannot believe that Congress intended § 6672 to constitute such an empty gesture. Its purpose is to protect government revenues by assuring that taxes for which workers are given credit are indeed collected. *Harrington v. United States*, 504 F.2d 1306, 1311 (1st Cir. 1974). This purpose is furthered by holding, as we here do, that Sorenson, for the purposes of § 6672, had "funds of the corporation [Regal] under his control with which to pay any tax liability of the corporation." *See Pacific National Insurance Co. v. United States*, 422 F.2d 26 (9th Cir.) *cert. denied*, 398 U.S. 937, 90 S.Ct. 1838, 26 L.Ed.2d 269 (1970). To the extent, if any, the trial court's holding to the contrary is a finding of fact, such finding is "clearly erroneous." Rule 52(a), F.R.Civ.P. The question remains, however, whether Sorenson's failure to collect and pay over withholding and FICA taxes was "willful" under § 6672 if, as he asserts, such funds were entirely expended as net wages, leaving no "surplus" from which to pay the taxes. To our knowledge no court has yet squarely faced this question.[2] We hold that the payment of net wages in circumstances where there are no available funds in excess of net wages from which to make withholding is a willful failure to collect and pay over under § 6672.

█ We reach this conclusion because under such circumstances there exists an intentional act to prefer creditors holding wage claims over tax claims held by the United States. It is clear that a "voluntary, conscious, and intentional act to prefer other creditors over the United States" constitutes a willful failure to pay over. *Bloom v. United States*, 272 F.2d 215, 223 (9th Cir. 1959). Employees to whom wages are owed are but a particular type of creditor. There is no basis in law for preferring the wage obligation to them over the withholding obligation to the Government. One who has voluntarily disabled himself from meeting this tax obligation by using all funds for wages has engaged in a "willful" act.[3]

The proper course for those, such as Sorenson, who have scarce resources is to prorate such funds as are available between the Government and the employees. Thus, assuming a withholding obligation of 10% on gross wages, a net wage obligation of $100,[4] and $100 in available funds, the employer may not pay $100 in net wages. He can only pay $100 in *gross* wages, consisting of $90 in net wages and $10 in withholding on behalf of the Government. The wage earners, thus, would continue to have a gross wage claim of approximately $11.11 while all accrued claims of the United States would have been satisfied. Upon payment of this balance of the wage claim, tax in the amount of $1.11 would be due the United States. The unmistakable consequence of our holding, therefore, is to require the employer to prefer the United States over his workers. While to some this may appear

---

**2.** The Government contends that *Frazier v. United States*, 304 F.2d 528 (5th Cir. 1962) and *Scott v. United States*, 354 F.2d 292, 173 Ct.Cl. 650 (1965) reject the "inability to pay" defense on substantially similar facts. Neither of these cases goes directly to the issue now before us.

**3.** Subsequent to oral argument in this case, the opinion of this court issued in *United States v. Poll*, 521 F.2d 329 (9th Cir. 1975) (petition for rehearing pending). *Poll* involved a felony prosecution under 26 U.S.C. § 7202 for the willful failure to truthfully account and pay over withholding taxes. We held there that evidence of a lack of funds with which to pay the taxes was relevant on the issue of willful-

ness. *See also United States v. Andros*, 484 F.2d 531, 533–34 (9th Cir. 1973). The *Poll* holding is only applicable to the criminal test of willfulness which requires "some element of evil motive and want of justification in view of all the financial circumstances of the taxpayer." *Spies v. United States*, 317 U.S. 492, 498, 63 S.Ct. 364, 368, 87 L.Ed. 418 (1943). Evil motive is not part of the civil test of willfulness. *Bloom v. United States, supra* at 223; *Harrington v. United States, supra* at 1311. *Poll* therefore does not control this case.

**4.** Ignoring one mill of tax, the *gross* wage obligation would be $111.11 and the tax at a rate of 10%, $11.11.

oppressive, we see no escape from this position so long as § 6672 remains in its present form. As written there is no authority for the employer to prefer *any* creditors over the United States.

 At oral argument counsel for Sorenson contended that the failures to collect and pay over were not willful because Sorenson mistakenly believed that withholding need not be made on salaries paid out of "personal" funds. There are some statements by Sorenson to this effect in the record but the record also shows that any misapprehensions or ignorance were largely self-imposed.[5] Sorenson was not a complete stranger to the federal withholding system. The corporation, whose affairs were under his direction, had successfully complied with the requirements of law for the first quarter of 1966. He also had an accountant and an attorney available when he sought advice. If he did not understand his responsibilities it is because he did not ask those who could have informed him; and if he did not ask we are inclined to believe that was because he preferred ignorance. We agree with the position of the Court of Claims in *Burack v. United States*, 461 F.2d 1282, 1292, 198 Ct.Cl. 855 (1972), that such an excuse simply amounts to an allegation of "reasonable cause" or "justifiable excuse," a defense which has been specifically rejected by this court. *Bloom, supra* at 223–24; *Pacific National Insurance Co., supra* at 33 n. 19. Even granting Sorenson favorable inferences from the record, we are convinced that he acted with a reckless disregard for obvious risks. Such a course of conduct is "willful" for purposes of § 6672. *Monday v. United States*, 421 F.2d 1210, 1215 (7th Cir.), *cert. denied*, 400 U.S. 821, 91 S.Ct. 38, 27 L.Ed.2d 48 (1970).

We find no merit in the estoppel argument raised below by appellee. The judgment of the district court is therefore reversed and the case remanded with instructions to enter judgment for the Government.

Reversed and remanded.

---

5. In response to a question concerning his initial contact with the Internal Revenue Service on the matter of withholding, Sorenson gave the following reply in his deposition at p. 38:

A. I think I made the statement right in the interrogatories that I called the Internal Revenue Service myself and notified them. I am going to have to say that I was always concerned about, as I was aware the possibility existed that there might be a liability being incurred to the corporation, and I had heard where personal bankruptcies do not discharge individual taxes. And I can't say that it didn't cross my mind from one time to another. In other words, I knew that the government taxes are a priority debt, and I think this was about the time when I put in the phone call to the Internal Revenue notifying them of the trust account situation with Lon Bryant.

The deposition goes on to relate certain difficulties with IRS delinquency notices because Sorenson chose not to open corporate mail for several months, preferring to toss unopened mail into a box to gather dust.