73 F.3d 939
 77 A.F.T.R.2d 96-379, 64 USLW 2445,
96-1 USTC P 50,057,
Unempl.Ins.Rep. (CCH) P 15083B,
96 Cal. Daily Op. Serv. 243,
96 Daily Journal D.A.R. 356
 Mary E. PHILLIPS, Plaintiff,
v.
UNITED STATES INTERNAL REVENUE SERVICE, an Agency of the
United States Government; United States of
America, Defendants-Counter-Claimants-Appellees,
and
George A. Wray, Counter-Defendant-Appellant.
 No. 93-16619.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 17, 1995.
Decided Jan. 10, 1996.
 
 Michael A. Pollard (on the briefs), and William M. Sneed (argued), of counsel, Baker & McKenzie, Chicago, Illinois, for counter-defendant, appellant.
 Frank P. Cihlar, United States Department of Justice, Washington, DC, for counter-claimants, defendants-appellees.
 Appeal from the United States District Court for the District of Hawaii.
 Before: REINHARDT, THOMPSON and KLEINFELD, Circuit Judges.
 Opinion by Judge KLEINFELD; Dissent by Judge REINHARDT.
 KLEINFELD, Circuit Judge:
 
 
 1
 This case involves the duty of a "responsible person" to pay his company's withholding taxes. More particularly, the issue is the definition of "willfully" failing to pay.
 
 Facts
 
 2
 Mr. Wray founded South Pacific Island Airways, Inc., in American Samoa. He owned all the stock in the corporation, and ran it as president.
 
 
 3
 In 1984, Mr. Wray was paralyzed from the neck down in a swimming accident. While he was in the hospital, a company plane veered off course in Norway, into or near Soviet air space. The FAA revoked the company's certification because of that and other violations. As a condition of recertifying, the FAA required Mr. Wray and others previously in charge to resign their corporate offices.
 
 
 4
 The company still belonged entirely to Mr. Wray, however, and he caused the bank account to be moved into one for which he would have signing authority. Mary Phillips, the plaintiff, became the person running the company on a day to day basis. During the first two quarters of 1985, while Mr. Wray was confined to his apartment by his paralysis, the company did not pay its employee withholding taxes over to the IRS.
 
 
 5
 The jury heard conflicting stories of how the withholding taxes for the first six months of 1985 came to be delinquent. According to Mr. Wray, Ms. Phillips had let the withholding taxes go into arrears in 1982, and when he found out about it from an IRS notice, he paid them and told her never to let that happen again. In 1985, after his accident, he heard that Ms. Phillips had laid off most employees, because the airline was not flying, yet kept all of her own staff. For that and other reasons, he moved the bulk of the company money into an account for which he, instead of Ms. Phillips, would have signing authority. But Mr. Wray could not physically perform the duties of a person running the company, and he had been required to resign by the FAA. Ms. Phillips would request funds from Mr. Wray, and he would make them available to her "as long as she gave a reason for it." She would call Mr. Wray once or twice a week to request funds, and Mr. Wray would arrange for checks to be delivered to Ms. Phillips. Ms. Phillips never mentioned to Mr. Wray that the taxes were not being paid, and he would have paid them if he had known.
 
 
 6
 Ms. Phillips gave a conflicting account. She testified that after the FAA shut down operations, the airline was in desperate financial condition, and Mr. Wray said the top priority was to get it flying again. She testified that he picked which creditors should get paid. When she told him the company owed withholding taxes, he told her not to pay them. Even though he was confined by his injuries, Mr. Wray controlled the money, and she could not pay the taxes without his authorization.
 
 
 7
 Initially, the IRS sought the taxes from Ms. Phillips, as the "responsible person" under 26 U.S.C. Sec. 6672 for the first two quarters of 1985. She paid enough so that she could sue for a refund in district court. Mr. Wray was joined as a defendant on the IRS counterclaim. Ms. Phillips wound up escaping liability for the taxes, and Mr. Wray, in a subsequent trial, was stuck with a judgment for $368,812 plus interest. Mr. Wray appeals.
 
 Analysis
 
 8
 "The standard of review on appeal for an alleged error in jury instructions depends on the nature of the claimed error." Oglesby v. Southern Pacific Transp. Co., 6 F.3d 603, 606 (9th Cir.1993). If it is the district court's formulation of an instruction which is claimed to be in error, we review the instructions as a whole for abuse of discretion by determining whether the instructions, considered as a whole, were inadequate or misleading. Gizoni v. Southwest Marine Inc., 56 F.3d 1138, 1142 n. 5 (9th Cir.1995); Jenkins v. Union Pacific Railroad Co., 22 F.3d 206, 210 (9th Cir.1994); Oglesby, 6 F.3d at 606. When the claim of error is that the district court misstated the elements that must be proved at trial, however, we review the instruction de novo. Gizoni, 56 F.3d at 1142; Jenkins, 22 F.3d at 210; Oglesby, 6 F.3d at 606. In either case, reversal is unnecessary if it is more probable than not that the error in the instructions is harmless. Jenkins, 22 F.3d at 210.
 
 
 9
 In the present case, Mr. Wray does not dispute that the "willfulness" element for a violation of 26 U.S.C. Sec. 6672 may be satisfied by a showing of "reckless disregard," or that the district court misstated the elements of a violation of Sec. 6672. Rather, he argues that the district court erred in formulating the definition of "reckless disregard." We therefore review the instructions as a whole for an abuse of discretion.
 
 
 10
 We also review admission of evidence for abuse of discretion. United States v. Herrera-Medina, 609 F.2d 376, 379 (9th Cir.1979).
 
 
 11
 A. Willfulness.
 
 
 12
 Mr. Wray concedes that, despite his physical indisposition, he was a "responsible person." He owned the company and controlled the bank account from which the money had to be drawn, and he directed which bills were to be paid. The issue is whether, as a responsible person, he "willfully" caused the money withheld for taxes not to be paid over to the IRS. His theory of the case was that he did not know the taxes were not being paid, so his failure to pay them was not "willful."
 
 
 13
 The controlling statute makes a responsible individual personally liable for a company's unpaid withholding taxes only if he "willfully" fails to pay them:
 
 
 14
 Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.
 
 
 15
 26 U.S.C. Sec. 6672 (emphasis added).
 
 
 16
 If a responsible person knows that withholding taxes are delinquent, and uses corporate funds to pay other expenses, even to meet the payroll out of personal funds he lends the corporation, our precedents require that the failure to pay withholding taxes be deemed "willful." Sorenson v. United States, 521 F.2d 325 (9th Cir.1975); Teel v. United States, 529 F.2d 903 (9th Cir.1976). This may seem oppressive to the employer and employees, Sorenson, 521 F.2d at 329, and amount to "unwittingly" willful, Teel, 529 F.2d at 905, which seems an oxymoron, but the proposition is established law.
 
 
 17
 Where a chief executive officer spent his time in the field making money for the business, left cosigned checks with his controller to pay the bills, and did not know his controller was failing to pay over the withholding taxes to the IRS, "[t]he question is one of fact" whether the nonpayment was willful, because the facts allowed for the possibility that the chief executive was "negligent, which is not willfulness." United States v. Leuschner, 336 F.2d 246, 248 (9th Cir.1964). But when he did it again in a second company, with the same controller, when he knew that the controller had once failed in the past to pay over the withholding taxes, and the chief executive did nothing to prevent a recurrence, that was willfulness as a matter of law. Id.
 
 
 18
 We have construed the term "willfulness" for purposes of failing to pay over withholding taxes as a "voluntary, conscious and intentional act to prefer other creditors over the United States." Klotz v. United States, 602 F.2d 920, 923 (9th Cir.1979); Davis v. United States, 961 F.2d 867, 871 (9th Cir.1992). No bad motive need be proved, and conduct motivated by reasonable cause, such as meeting the payroll, may be "willful." Davis, 961 F.2d at 871; Sorenson, 521 F.2d at 327.
 
 
 19
 "But the Government must prove more than mere negligence." Klotz, 602 F.2d at 924. Where a corporate officer sent the IRS a check, but the IRS did not negotiate it until a month later when the officer had been forced out of power and the corporation dishonored his check without his knowledge, his failure to pay the taxes was non-willful as a matter of law. Dudley v. United States, 428 F.2d 1196 (9th Cir.1970). Even if he was negligent, "negligence is not willfulness." Id. at 1200.
 
 
 20
 We have said that "reckless disregard" of whether the taxes are being paid over, as distinguished from actual knowledge of whether they are being paid over, may suffice to establish willfulness. Sorenson, 521 F.2d at 329; Teel, 529 F.2d at 905. Other circuits so hold. See, e.g., Kalb v. United States, 505 F.2d 506, 511 (2d Cir.1974); Wood v. United States, 808 F.2d 411, 415 (5th Cir.1987); Sawyer v. United States, 831 F.2d 755, 758 (7th Cir.1987); Malloy v. United States, 17 F.3d 329, 332 (11th Cir.1994).
 
 
 21
 Mr. Wray's argument on appeal is that the district court instruction allowed the jury to find willfulness based on mere negligence, by defining reckless disregard so that it meant no more than negligence. He does not dispute that reckless disregard of whether the taxes are paid over amounts to willfulness. Rather, he shows that the district court copied language from a Seventh Circuit case defining "gross negligence," deleted the term "gross negligence," and attached the definition to "reckless disregard."
 
 
 22
 Here is the instruction which the district judge gave:
 
 
 23
 Liability is imposed on a responsible person, under Section 6672, only if the person willfully fails to collect, account for, or pay over withheld taxes. "Willfulness," within the meaning of Section 6672, requires a voluntary, conscious and intentional act to prefer other creditors over the United States. Liability does not depend on the presence of an evil motive or specific intent to deprive the government of revenue. In fact, conduct motivated by a reasonable cause may, nonetheless, be willful. Rather, a responsible person acts willfully whenever he permits funds of the corporation to be paid to other creditors when he is aware that withholding taxes due the government have not been paid. In other words, when a responsible person does not use his authority to see that the withholding taxes are paid, but rather permits the corporation to continue its operation, paying suppliers and other creditors, his conduct is willful.
 
 
 24
 Further, even in the absence of express knowledge of a default and payment of withholding taxes, willfulness, for the purpose of Section 6672, exists where a responsible person pays other creditors with a reckless disregard as to whether trust fund taxes have been paid over to the government. For this purpose, recklessness is established if the party, first, clearly ought to have known that; second, there was a grave risk that withholding taxes were not being paid; and if, three, he was in a position to find out for certain very easily.
 
 
 25
 Recklessness is also established if a responsible person fails to investigate or correct mismanagement after being notified of a default in the payment of withholding tax.
 
 
 26
 (Emphasis added).
 
 
 27
 The district court took the emphasized language from Wright v. United States, 809 F.2d 425, 427 (7th Cir.1987) (defining Sec. 6672 willfulness). In Wright, the Seventh Circuit said "we think gross negligence is enough to establish reckless disregard." Id. at 427. The court reasoned that "if a high degree of recklessness were required the purpose of the statute would be thwarted, just by compartmentalizing responsibilities within a business (however small) and adopting a 'hear no evil--see no evil' policy...." Wright, 809 F.2d at 427. In Wright, a man bought out a failing company, knowing that the principal had failed to pay withholding taxes in the past, left the old principal in place, knew the company was still failing, directed payment of other creditors, and did not check on whether the withholding taxes were being paid over though he could have found out very easily. The Seventh Circuit used this language, from which district court drew the challenged language in the instruction:
 
 
 28
 Concretely we hold that the "responsible person" is liable if he (1) clearly ought to have known that (2) there was a grave risk that withholding taxes were not being paid and if (3) he was in a position to find out for certain very easily.
 
 
 29
 Id.
 
 
 30
 We conclude that in the facts of this case, the instruction was not erroneous. Though "mere negligence" is not willfulness, gross negligence is not "mere" negligence. The instruction is not poisoned by the use of language drawn from a definition of gross negligence. Not all cases would include evidence justifying the instruction, but in this case, a jury could have concluded that Mr. Wray clearly ought to have known there was a grave risk that the withholding taxes were not being paid over. He knew employees were being paid but no flights for hire were being made, and that Ms. Phillips had let the taxes go unpaid once before. Also, he was approving which bills were to be paid. Even if the jury believed Mr. Wray's account entirely, it could conclude that he should have asked her if she was paying the taxes, in light of her failure to pay them three years earlier. The jury could also have thought that even if she did not mention that she was failing to pay the taxes, Mr. Wray clearly should have noticed that the withholding taxes were not among the checks for which she sought approval. A jury could also conclude from the evidence, even if it did not believe Ms. Phillips' testimony, that all he needed to do to find out that Ms. Phillips was not paying over the withholding taxes was ask her.
 
 
 31
 As in many "responsible person" cases the result is not one we reach with any pleasure. The jury instruction allowed for a verdict against Mr. Wray even if the jury thought Ms. Phillips was lying and Mr. Wray was telling the truth. If so, a man who was then paralyzed from the neck down winds up paying an enormous bill to the government because he did not attend fully enough to the business which was failing in his forced absence, and did not discover that a trusted employee (who escaped legal responsibility) was not doing her duty. A jury could find, however, that under the Draconian enforcement power which the IRS has under the precedents we are compelled to follow, Mr. Wray recklessly disregarded his tax responsibility.[1]
 
 
 32
 B. Prejudicial evidence.
 
 
 33
 Mr. Wray challenges admission of certain evidence on the ground that it tended to show character rather than anything relevant to his conduct. A man who became controller a year after the delinquency period testified that when he was controller and the issue of delinquent withholding taxes came up, Mr. Wray emphasized to him the importance of paying other bills. A man who had directed operations testified that when he advised Mr. Wray, a year before the delinquency period, to hire more pilots in order to keep within FAA maximum hours limits, Mr. Wray said "let's live dangerously." Another former employee testified that when Ms. Phillips failed to pay over the withholding taxes in 1982, Mr. Wray said that the problem arose because Ms. Phillips had not paid the taxes on time, and he responded that she could not pay anything Mr. Wray did not approve. Mr. Wray objected to admission of all this testimony.
 
 
 34
 Mr. Wray argues that pre- and post-delinquency conduct was evidence of other wrongs to prove his character in order to show conduct conforming to bad character, so was inadmissible under Federal Rule of Evidence 404(b). Except for the "live dangerously" remark, the evidence did not really suggest other wrongs. That a man who owns a company controls which bills are paid, and that he takes care to see that his company's debts to creditors without the coercive power of the IRS are paid, would not amount to "prior bad acts." People of good character may choose to pay their employees and weak creditors instead of paying the strongest creditor of all, the IRS. This was evidence of opportunity to control which debts were paid, absence of mistake as to which debts were paid, and attention to which debts were paid, all tending to show that Mr. Wray probably controlled which debts were paid. It is not evidence of character from which an inference of bad conduct was suggested.
 
 
 35
 That the time period for this evidence was prior or subsequent to the delinquency period does not bar admission. Cf. United States v. Voorhies, 658 F.2d 710, 715 (9th Cir.1981) ("acts both prior and subsequent to the indictment period may be probative of the defendant's state of mind"). The relevance was more attenuated than in most cases, because Mr. Wray's control was probably less when he was paralyzed in his apartment than when he was physically capable of personal oversight in his office. Nevertheless his pattern of personal attention to the details of which bills were paid before and after the delinquency period affected the probability that he controlled which bills were paid during his period out of the office.
 
 
 36
 The "live dangerously" remark is more troublesome. Probably the remark should not have been allowed in. It would tend to make a jury think Mr. Wray purposely endangered passengers, and encourage the jury to punish him. This evidence had little tendency to prove that Mr. Wray willfully caused the withholding tax reserves to be diverted to other creditors. Proving that the defendant is a bad person, as opposed to proving that he did what he is accused of, so that a jury will wish to find against him even in the absence of sufficient evidence, is precisely the evil against which Federal Rule of Evidence 404 is directed.
 
 
 37
 We conclude, however, that admission of the "live dangerously" remark was harmless error. We therefore do not have to decide whether allowing it in was an abuse of discretion. We are required to disregard an error in the admission of evidence "which does not affect the substantial rights of the parties." Fed.R.Civ.P. 61; Gray v. Shell Oil Co., 469 F.2d 742, 751-52 (9th Cir.1972). Wray bears the burden of showing that prejudice resulted. Palmer v. Hoffman, 318 U.S. 109, 116, 63 S.Ct. 477, 481-82, 87 L.Ed. 645 (1943). Even disregarding all the evidence which Mr. Wray's defense impeached, he controlled which bills were paid, did not ask whether the withholding taxes were being paid, knew Ms. Phillips had let them go in arrears a few years before, and knew revenues had halted while overhead continued. When he did nothing to prevent Ms. Phillips from letting the withholding taxes go into arrears a second time, in these circumstances, and did not ask her whether she was paying the taxes, the jury had no basis on which to find an absence of willfulness. Cf. United States v. Leuschner, 336 F.2d 246, 248 (9th Cir.1964) ("He could no longer, in good faith, look to Anders to do his duty for him. His complete failure to do anything to see that Anders, or he himself, performed that duty, is, we think, as a matter of law, a 'voluntary, conscious and intentional' failure.").
 
 
 38
 AFFIRMED.
 
 REINHARDT, Circuit Judge, dissenting
 
 39
 The majority admits that requiring Mr. Wray to pay more than $368,812 in penalties might well be unjust but claims it is compelled to do so by court precedents giving the IRS "Draconian enforcement power." Majority opinion at 943. In fact, no Supreme Court or Ninth Circuit precedent requires the conclusion that the majority embraces here--that "gross negligence" is sufficient to sustain a verdict under 26 U.S.C. Sec. 6672, a provision that only penalizes someone who "willfully fails" to pay withholding taxes. Nor is such a conclusion required by a proper analysis of the various legal terms involved. In fact, it is the majority, not the Congress or prior courts, that arms the tax collector with Draconian enforcement power. Because I believe that the majority's conclusion that "gross negligence" is the same as willful failure is contrary to law, and also unjust, I dissent.
 
 
 40
 In defending its decision to adopt a gross negligence standard, the majority states that gross negligence is not "mere" negligence. Majority opinion at 943. I would add that gross negligence is also not reckless disregard and is certainly not willful failure. While the meaning of the term "willful" varies somewhat from statute to statute, "willful" generally requires a degree of knowledge or intent. For purposes of interpreting tax statutes, the Court has repeatedly held that "willful" requires not only specific intent to do that which is prohibited by law, but also knowledge that one's actions are prohibited by law. See Cheek v. United States, 498 U.S. 192, 196, 210, 111 S.Ct. 604, 607-08, 615, 112 L.Ed.2d 617 (1991) ("Willfulness, as construed by our prior decisions in criminal tax cases, requires the Government to prove that the law imposed a duty on the defendant, that the defendant knew of this duty, and that he voluntarily and intentionally violated that duty."); United States v. Bishop, 412 U.S. 346, 360, 93 S.Ct. 2008, 2017, 36 L.Ed.2d 941 (1973) (describing "willfully" as connoting "a voluntary, intentional violation of a known legal duty").
 
 
 41
 Needless to say, Cheek and Bishop are both criminal cases. I do not mean to imply that the term "willfully" in a civil statute must be defined synonymously with the term "willfully" in a criminal statute. I do mean to assert, however, that just as the term "willfully" places an extra burden on the government in obtaining a conviction under a criminal tax statute, so the term "willfully" places an extra burden on the government in civil tax litigation.[1] The same policy concern that has led the Court to require a heightened scienter requirement in criminal tax cases--a fear that innocent taxpayers might otherwise run afoul of the tax code's myriad requirements--also operates in civil tax cases. Moreover, 26 U.S.C. Sec. 6672 is not a typical civil statute; it is punitive in nature; it penalizes corporate officers by imposing personal tax liability on the officers for unpaid corporate taxes. As this court said recently, "Sec. 6672 liability ... operates as a penalty by creating an obligation, separate and distinct from the underlying tax obligation, that would not exist unless the taxpayers had been responsible for a 'willful' violation of law." Duncan v. Commissioner of Internal Revenue Service, 68 F.3d 315, 318.
 
 
 42
 As a matter of elemental fairness, if not constitutionality, liability under Sec. 6672 rests on showing a willful failure to pay corporate withholding taxes. Our court has long recognized the need to protect corporate officers who are merely careless or negligent from being unjustly saddled with civil penalties for their companies' failure to pay its withholding taxes. For more than 30 years it has been the law in this circuit that a violation of 26 U.S.C. Sec. 6672 is demonstrated by a "voluntary, conscious, and intentional act to prefer other creditors over the United States." Bloom v. United States, 272 F.2d 215, 223 (9th Cir.1959); accord Rykoff v. United States, 40 F.3d 305, 307 (9th Cir.1994).
 
 
 43
 Gross negligence, by contrast, does not require "a voluntary, conscious, and intentional act." As defined by the Seventh Circuit and as endorsed by today's majority, a person is grossly negligent, and so liable under Sec. 6672, even if his failure to ensure that the company paid its taxes was the result of neglect or carelessness.[2] The Seventh Circuit said:
 
 
 44
 Concretely, we hold that the "responsible person" is liable if he (1) clearly ought to have known that (2) there was a grave risk that withholding taxes were not being paid and if (3) he was in a position to find out for certain very easily.
 
 
 45
 Conspicuously absent is a requirement for actual knowledge or intent.
 
 
 46
 As this case demonstrates, the distinction between willful failure and gross negligence is an important one. Under a gross negligence or ought-to-know standard, Mr. Wray might well be liable even though he is paralyzed from the neck down and was confined to his apartment during the period when the taxes were not paid, even though he had entrusted day-to-day management of his company to a long-time aide, and even though that aide never told him that the withholding taxes were not being paid. Under a willful failure to pay standard, however, the verdict that the majority bemoans could not be sustained, because there is no evidence that Mr. Wray knew that the taxes were not being paid, let alone that he intended not to pay them.
 
 
 47
 It is true that this circuit, like several others, has held that in some circumstances "reckless disregard" may suffice to prove a violation of 26 U.S.C. Sec. 6672. See Teel v. United States, 529 F.2d 903, 905 (9th Cir.1976); Sorenson v. United States, 521 F.2d 325, 329 (9th Cir.1975). Reckless disregard, however, ordinarily requires intentional action, while negligence, even gross negligence, by definition does not. The model penal code says: "A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk ..." American Law Institution, Model Penal Code and Commentaries, Sec. 2.02 (emphasis added). While Teel and Sorenson permit use of a reckless disregard standard, at least in some circumstances, to establish liability under Sec. 6672, neither case supports elimination of the requirement of an intentional act as a prerequisite for finding liability under Sec. 6672.
 
 
 48
 Moreover, neither case creates a general exception to the requirement for some degree of actual knowledge. Sorenson, the earlier of the two cases, involved a defendant whose ignorance was "self-imposed" or "preferred." 521 F.2d at 329. It was against that backdrop that this court said that acting "with a reckless disregard for obvious risks" could constitute willfulness. Id. That standard, the functional equivalent of a Jewell or conscious avoidance instruction in criminal cases, was designed to ensure that willful ignorance could not serve as a defense to a Sec. 6672 claim. Teel relied on Sorenson and Kalb v. United States, 505 F.2d 506 (2d Cir.1974), a case in which the Second Circuit said "willful conduct may also indicate a reckless disregard for obvious or known risks." 505 F.2d at 511 (internal citation and quotation omitted).[3] Thus both Sorenson and Teel are about willful ignorance. Neither case holds that acting with reckless disregard of an unknown risk--when the defendant has not willfully closed his eyes to that risk--suffices to establish a violation of Sec. 6672.[4]
 
 
 49
 In sum, the majority significantly lowers the standard for imposing liability under Sec. 6672 by eliminating two prerequisites for finding a willful failure to pay over withholding taxes. First, by approving the use of "gross negligence" the majority has silently dropped the critical requirement of an intentional action. Second, by replacing the phrase "known or obvious risk" with the term "grave risk" the majority has substantially relaxed the rule regarding knowledge. Majority opinion at 943. The phrase "known or obvious risk" contains an inherent limitation and is designed to address a particular problem--willful ignorance. The term "grave risk," by contrast, contains no such limitation and so expands liability under Sec. 6672 substantially. By replacing the term "known or obvious" with the word "grave" the majority opinion replaces (1) a standard that requires actual knowledge or willful ignorance with (2) an ought-to-know standard. The result of this change plus the elimination of the intent criterion is to reduce significantly the showing required to establish a violation of Sec. 6672.
 
 
 50
 A look at the court's precedents shows as much. It is clear that in civil statutes reckless disregard is generally not the same as gross negligence. In In re Northern Dist. of Cal., Dalkon Shield, Etc., 693 F.2d 847 (9th Cir.1982), cert. denied, 459 U.S. 1171, 103 S.Ct. 817, 74 L.Ed.2d 1015 (1983), for instance, this court made it clear that reckless disregard is different from gross negligence and also that reckless disregard requires a higher degree of culpability than gross negligence. The court said, "Punitive damage standards can range from gross negligence to reckless disregard to various levels of willfullness and wantonness." Id. at 850. See also Fuller v. City of Oakland, Cal., 47 F.3d 1522, 1534 (9th Cir.1995) (holding that "conduct demonstrating gross negligence or reckless disregard of plaintiffs' civil rights ... [is] actionable under Sec. 1983") (internal citations and quotations omitted) (emphasis added); Hammond v. County of Madera, 859 F.2d 797, 803 (9th Cir.1988) (same); United Medical Laboratories v. Columbia Broadcasting Sys., 404 F.2d 706, 711 (9th Cir.1968), cert. denied, 394 U.S. 921, 89 S.Ct. 1197, 22 L.Ed.2d 454 (1969) (explaining that courts have disagreed in the context of defamation case about "whether there should be gradations in the standard for defeasance of the immunity (in effect negligence, gross negligence and reckless disregard, respectively) to enable the falsity occurring in a publication to be dealt with on varying responsibility as to the type of situation involved").
 
 
 51
 The majority does not claim that reckless disregard and gross negligence are synonymous. Nor does it deny that gross negligence involves less culpability than reckless disregard. Instead, it simply adopts the Seventh Circuit's view that gross negligence is sufficient to justify the imposition of liability without addressing the difference in the standards. In the pivotal paragraph of its opinion, the majority quotes the Seventh Circuit approvingly as that court holds, in lawyerly language, that gross negligence is all that is required to establish willful failure to pay withholding taxes:
 
 
 52
 In Wright, the Seventh Circuit said, "we think gross negligence is enough to establish reckless disregard." Id. The court reasoned that "if a high degree of recklessness were required the purpose of the statute would be thwarted, just be compartmentalizing responsibilities within a business (however small) and adopting a 'hear no evil--see no evil' policy ..." Wright, 809 F.2d at 427. Majority opinion at 943.
 
 
 53
 The question, however, is whether gross negligence is sufficient to establish willful failure, not whether it suffices to prove reckless disregard. The statute passed by Congress only penalizes willful failure to pay withholding taxes. Such language, adopted to protect taxpayers, requires a showing of an intentional and knowing violation to trigger the penalty provisions of Sec. 6672, or at the very least conscious avoidance. In any event, it should be beyond dispute that willful failure sets forth a higher standard of culpability than gross negligence. Whether the Seventh Circuit or the majority here believes that gross negligence should be enough is irrelevant. The language Congress chose clearly imposes a more rigorous standard.
 
 
 54
 The step the majority takes today toward evisceration of the willful failure requirement may seem to be of slight consequence. The lines between gross negligence and reckless disregard or gross negligence and willful failure are often far from clear. Juries may have practical difficulty in making such fine, legalistic distinctions. In some cases, the facts may lie in the margins and a reasonable jury could end up placing the conduct on either side of the line. Nevertheless, preserving and applying such distinctions is fundamental to the successful operation of our legal system. We draw similar lines in tort law, criminal law and in other fields as well. For example, in our own application of standards of review, we are required to distinguish between error, clear error, and plain error. The fact is that there is a distinction between gross negligence and willful failure, and the latter term requires a showing of greater culpability. The majority simply ignores that elementary principle and the consequences of its own decision.
 
 
 55
 In a feat that defies logic, the majority responds to this dissent by saying: "Our decision is not that gross negligence is willfulness ..." Majority opinion at 945 n. 1. To reach that remarkable conclusion, the majority employs a traditional three-card-monte approach. It argues, apparently straight-facedly, that even though it holds that willfulness can be shown by reckless disregard, and that reckless disregard can be shown by gross negligence, nonetheless it is not saying that willfulness can be proved by showing gross negligence.
 
 
 56
 The majority's explanation is that all it does here is define reckless disregard in terms of gross negligence. Then the majority goes on to say: This court previously decided that reckless disregard can constitute willfulness for purposes of the statute before us; it is not our fault that our holding that gross negligence can constitute reckless disregard means that a showing of gross negligence is now sufficient to prove willfulness. It then concludes, plaintively: all we are doing is defining terms. The consequences, no matter how contrary to law, are someone else's problem.
 
 
 57
 The majority's rhetorical gymnastics cannot obscure what it has done in this case. It has just held that Mr. Wray may be penalized under a statute that requires proof of wilfulness when the government has established only the existence of gross negligence. It cannot blame that decision, as it seeks to do, on a prior decision by this court, on Congress, or on "Draconian" powers possessed by the IRS. No one is responsible for the unfortunate and erroneous rule that this case establishes but the majority itself.
 
 
 58
 The panel's holding cites no precedent for its rule, except for the equally misguided and unpersuasive decision by the Seventh Circuit. Fortunately, one does not even have to try to comprehend the new definitional logic the majority puts forth. All we need to know is that from time immemorial gross negligence and willfulness have constituted entirely different concepts--in tort law, criminal law, tax law, and any other field of law in which the two concepts are employed. See, e.g., W. Page Keeton et al., Prosser and Keeton on The Law of Torts 212 (5th Ed.1984 & 1988 Supp.) ("[M]ost courts consider that 'gross negligence' falls short of a reckless disregard of the consequences, and differs from ordinary negligence only in degree, not in kind").
 
 
 59
 Willfulness has historically required more than negligence, gross or otherwise. Now, in this circuit at least for purposes of Sec. 6672, that is no longer the case. Mirabile dictu! Negligence and willfulness are the same. Accordingly, I respectfully dissent.
 
 
 
 [1]
 The dissent says that we have held that gross negligence is sufficient to establish willfulness under 26 U.S.C. Sec. 6672. Our decision is not that gross negligence is willfulness, but rather that the instruction on reckless disregard was correct, even though it used some language with which the Seventh Circuit defined gross (as opposed to "mere") negligence. We are bound by our precedents establishing that reckless disregard is willfulness for purposes of 26 U.S.C. Sec. 6672. The instruction accurately defined reckless disregard for purposes of civil liability. The dissent says that "[t]he question, however, is whether gross negligence is sufficient to establish willful failure, not whether it suffices to prove reckless disregard." We do not agree that this is the question. Our precedents already bind us to the proposition that reckless disregard suffices to prove willful failure, so the question can only be whether the court's use of gross negligence language to define reckless disregard was correct. If reckless disregard amounts to willful failure, an established proposition in this circuit which we cannot overturn, and if the instructional language sufficiently defines reckless disregard, then reckless disregard so defined necessarily amounts to willfulness. There is also something to be said in favor of avoiding intercircuit conflict in interpretation of the tax laws, by maintaining consistency with the Seventh Circuit interpretation. Our dissenting colleague's citation of criminal cases would seem to intimate that the same state of mind which would subject a person to a civil tax penalty should subject him to criminal penalties, but he says "I do not mean to imply" that, and neither do we
 
 
 [1]
 I would point out, as the Supreme Court notes in Slodov v. United States, 436 U.S. 238, 245, 98 S.Ct. 1778, 1784, 56 L.Ed.2d 251 (1978), "Sec. 7202 of the Code, which tracks the wording of Sec. 6672, makes a violation punishable as a felony subject to a fine of $10,000 and imprisonment for five years."
 
 
 [2]
 Eight years after the Seventh Circuit issued its opinion, only two other circuit courts have chosen to follow the Seventh Circuit's lead. See United States v. Carrigan, 31 F.3d 130, 134 (3rd Cir.1994); Thomsen v. United States, 887 F.2d 12, 18 (1st Cir.1989)
 
 
 [3]
 Teel said that "nonreckless ignorance" of the failure to pay over withholding taxes constitutes an adequate defense under 26 U.S.C. Sec. 6672, but did not define "nonreckless ignorance." 529 F.2d at 905. In any case, that part of the court's discussion is dicta because the court affirmed the verdict against Teel on the basis of his failure to pay over withholding taxes during a period in which he knew the taxes were owing and unpaid. Id. at 905-06
 
 
 [4]
 See also Malloy v. U.S., 17 F.3d 329, 332 (11th Cir.1994) ("The willfulness requirement is satisfied if the responsible person acts with a reckless disregard of a known or obvious risk that the trust funds may not be remitted to the Government, such as by failing to investigate or to correct mismanagement after being notified that withholding taxes have not been duly admitted") (emphasis in the original), citing Mazo v. United States, 591 F.2d 1151, 1154 (5th Cir.), cert. denied, 444 U.S. 842, 100 S.Ct. 82, 62 L.Ed.2d 54 (1979); Wood v. United States, 808 F.2d 411, 415 (5th Cir.1987) ("A responsible person also acts willfully by proceeding with a reckless disregard of a known or obvious risk that trust funds may not be remitted to the government") (internal citations and quotations omitted)