2005 UT App 179

**Eric STEVENSON, Petitioner,**

v.

**TAX COMMISSION, TAXPAYER SERVICES DIVISION, Respondent.**

**No. 20030748–CA.**

Court of Appeals of Utah.

April 14, 2005.

Noel S. Hyde, Ogden, for Petitioner.

Mark L. Shurtleff, Attorney General; and Gale K. Francis, Assistant Attorney General, Salt Lake City, for Respondent.

Before Judges BILLINGS, BENCH, and JACKSON.

## OPINION

JACKSON, Judge:

¶ 1 Eric Stevenson appeals the Utah Tax Commission's (Commission) personal penalty assessment for failure to collect, truthfully account for, and pay the withholding taxes owed by Tower Communications, Inc. (Tower) for the second, third, and fourth quarters of 2000 under Utah Code section 59–1–302. *See* Utah Code § 59–1–302(2) (1994). We reverse and remand.

## BACKGROUND

¶ 2 In 1999 Stevenson, Brett N. Cherry, and Ken Steckelberg organized Tower as equal partners, with Steckelberg acting as president and Stevenson as secretary/treasurer. Steckelberg was in charge of day-to-day operations of the company, while Stevenson processed all company payments and had sole authority to sign checks on the company's behalf.

¶ 3 Stevenson also worked full-time as a loan officer at the Bank of Utah and would only visit Tower's offices about once a month. To accomplish his duties with Tower, he relied on a bookkeeper to organize Tower's finances and prepare checks for him to sign. At least on some occasions, Stevenson would sign these checks without reviewing invoices or company records.

¶ 4 Stevenson would occasionally inquire to Steckelberg about the finances of the company. Steckelberg assured him all was well; however, beginning with the second quarter of 2000, the bookkeeper did not present Stevenson with checks for Tower's withholding taxes. The problem continued for the third and fourth quarter. The bookkeeper never prepared checks for these taxes, and Stevenson apparently never noticed.

¶ 5 Third parties alerted Stevenson to problems within the company, and he confronted Steckelberg sometime in November 2000. Unsatisfied with Steckelberg's assurances, Stevenson had an accountant review Tower's records and discovered that, among other financial problems, the withholding taxes had not been paid. Stevenson took immediate action, dissolving the business and ter-

minating Steckelberg's employment with Cherry's help.

¶ 6 At the time, Tower owed Stevenson's employer, Bank of Utah, a considerable amount of money on a loan secured by Tower's accounts receivable and other assets. To pay off this loan, Stevenson arranged to collect Tower's largest receivable from XO Communications, which owed Tower approximately $83,000. Payment of this amount had been impeded by the claims of several subcontractors and suppliers whom Tower had not yet paid. To remedy the problem, Stevenson provided about $16,000 of his personal funds to buy the claims of the subcontractors and suppliers, and thereby obligate XO Communications to pay off its account to Tower. Stevenson entered into an agreement with XO Communications on November 15, 2001 to have this amount paid directly to the Bank of Utah. XO transferred this money to the bank on December 7, 2001, and it was used to pay off the loan. None of the money was used to pay Tower's delinquent withholding taxes.

¶ 7 On July 12, 2002, the Commission notified Stevenson that a personal penalty of $12,018.04 had been assessed against him for Tower's unpaid withholding taxes. Stevenson requested a hearing, which was held on August 5, 2003, and thirteen days later, the Administrative Law Judge (ALJ) for the Commission issued her determination that Stevenson (1) was a party responsible for payment and (2) had willfully failed to pay Tower's withholding taxes under Utah Code section 59–1–302(2).

## ISSUES AND STANDARD OF REVIEW

¶ 8 On appeal, Stevenson concedes that he is a party responsible for payment of the taxes but contests the Commission's conclusion that his failure to pay was willful. Specifically, he claims the Commission has failed to provide prima facie evidence of willfulness under Utah Code section 59–1–302(7)(b), and even if it has, he urges us to adopt the "reasonable cause" defense to nonpayment articulated by the Tenth Circuit's en banc decision in *Finley v. United States*, 123 F.3d 1342, 1347–48 (1997). Both of these issues

are questions of first impression for Utah courts.

¶ 9 The standard of review for tax cases is defined by statute. We must "grant the [C]ommission deference concerning its written findings of fact, applying a substantial evidence standard on review" and "grant the [C]ommission no deference concerning its conclusions of law, applying a correction of error standard, unless there is an explicit grant of discretion contained in a statute at issue." Utah Code Ann. § 59–1–610(1)(a)–(b) (2004).

¶ 10 Because Stevenson does not challenge the ALJ's written findings of fact, we need only determine whether our review of the ALJ's willfulness determination presents a question of fact or a question of law. The Commission argues that the willfulness determination presents a question of fact, citing to the Tenth Circuit's treatment of the similar willfulness standard used in federal tax law. *See Bradshaw v. United States*, 83 F.3d 1175, 1183 (10th Cir.1995) (noting that "[o]ur prior decisions have ... treated [the issue of willfulness] as an issue of fact"). We disagree with this characterization and conclude, as does the Tenth Circuit in its more recent cases, that the issue of willfulness in tax cases presents a mixed question of law and fact. *See Finley*, 123 F.3d at 1348 (en banc) (recognizing that established factual paradigms may be used to "identify willful conduct as a matter of law" but that taxpayers should be allowed a "delimited opportunity to demonstrate to a jury there was reasonable cause sufficient to excuse failure to pay the withholding taxes").

¶ 11 As discussed in the next section, Utah Code section 59–1–302(7)(b) permits the Commission to present prima facie evidence of willfulness by demonstrating that the responsible party "recklessly disregarded obvious or known risks" of nonpayment or "made a voluntary, conscious, and intentional decision to prefer other creditors over the state government." Utah Code Ann. § 59–1–302(7)(b)(i)–(ii). We conclude that the question of whether the Commission has presented prima facie evidence is a question of law, *see Sheikh v. Department of Pub. Safety*, 904 P.2d 1103, 1105 (Utah Ct.App.1995)

("Whether a party has failed to establish a prima facie case is a question of law."), which we review for correctness, *see* Utah Code Ann. § 59–1–610(1)(b). Because the ALJ did not frame its ruling in terms of prima facie evidence, we will treat its conclusions with regard to Stevenson's recklessness and preference as a ruling on the Commission's prima facie evidence.

¶ 12 Once prima facie evidence is presented, the taxpayer assumes the burden of disproving willfulness. This is a factual question, which we review for "substantial evidence." *Id.* § 59–1–610(1)(a).

## ANALYSIS

### I. Statutory Framework

¶ 13 By law, employers are required to pay quarterly withholding taxes one month after each quarter ends. *See id.* § 59–10–406(1)(a) (2000). When a business fails to pay withholding taxes, the Commission may assess a personal penalty for all such outstanding taxes against persons in the business who are responsible for paying the taxes but willfully fail to do so:

> Any person required to collect, truthfully account for, and pay over any [withholding] tax ... who willfully fails to collect the tax, fails to truthfully account for and pay over the tax, or attempts in any manner to evade or defeat any tax or payment of the tax, shall be liable for a penalty equal to the total amount of the tax evaded, not collected, not accounted for, or not paid over.

*Id.* § 59–1–302(2).

¶ 14 In determining whether a responsible person has willfully failed to pay the tax, the ALJ or the reviewing court "shall consider any inference and evidence that a person has willfully failed to collect, truthfully account

for, or pay over any [withholding] tax." *Id.* § 59–1–302(7)(a). But, the "court need not find a bad motive or specific intent to defraud the government or deprive it of revenue to establish willfulness." *Id.* § 59–1–302(7)(c). Under the statute, "[i]t is prima facie evidence that a person has willfully failed to collect, truthfully account for, or pay over any [withholding] taxes ... if the commission or a court finds that the person charged with the responsibility for collecting, accounting for, or paying over the taxes" did any of the following:

> (i) made a voluntary, conscious, and intentional decision to prefer other creditors over the state government or utilize the tax money for personal purposes;
>
> (ii) recklessly disregarded obvious or known risks, which resulted in the failure to collect, account for, or pay over the tax; or
>
> (iii) failed to investigate or to correct mismanagement, having notice that the tax was not or is not being collected, accounted for, or paid over as provided by law.

*Id.* § 59–1–302(7)(b).

¶ 15 No Utah caselaw has yet defined "willfulness" for tax purposes, but federal cases interpreting 26 U.S.C. section 6672 apply a similar standard [1] and provide some insight. Under the federal law, " '[m]ere negligence' " is insufficient to prove willfulness, but by the same token, " 'it is not necessary that there be present an intent to defraud or to deprive the [government] of the taxes due, nor need bad motives or wicked design be proved in order to constitute willfulness.' " *Cook v. United States*, 52 Fed. Cl. 62, 69 (2002) (citation omitted); *see also Denbo v. United States*, 988 F.2d 1029, 1033 (10th Cir.1993) ("[N]egligence does not give rise to section 6673 liability.").

---

**1.** Much like Utah Code section 59–1–302(2), 26 U.S.C. section 6672(a) provides that

> [a]ny person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, ... shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

26 U.S.C. § 6672(a) (2000). Also like the Utah statute, federal courts have held that willfulness may be shown by proving that the taxpayer either (1) made a voluntary preference to another creditor or (2) recklessly disregarded a known or obvious risk of nonpayment. *See, e.g., Cook v. United States*, 52 Fed. Cl. 62, 69 (2002).

## II. The Commission's Prima Facie Evidence of Willfulness

¶16 The ALJ concluded that Stevenson had willfully failed to pay Tower's withholding taxes for two reasons. First, he demonstrated a "reckless disregard of an obvious risk that withholding taxes were not being paid" because, as secretary/treasurer with sole authority to sign checks, he should have been aware that the company had not paid taxes for the quarters in question. Second, the ALJ also concluded that Stevenson had "made a voluntary, conscious, and intentional decision to prefer the Bank of Utah over the state of Utah when he was able to obtain payment on [XO Communication's] obligation to Tower."

### A. Recklessness

■ ¶17 Stevenson first argues that the ALJ erred in its determination of recklessness. He claims that, although he failed to personally assure that the withholding taxes were being paid, his omission amounts to mere negligence, not recklessness. We agree. Given the ALJ's factual finding that Stevenson did not have actual notice of Tower's tax deficiency until some time around November 2000, the Commission must prove that he ignored an "obvious risk" of nonpayment. Generally, for a risk of nonpayment to be obvious, the company must have had a history of failing to pay taxes that would place the responsible party on notice. *See, e.g., Hammon v. United States,* 21 Cl.Ct. 14 (1990) (determining taxpayer was reckless when he knew of company's tax deficiencies for prior years and failed to institute safeguards to assure payment). But, absent actual notice, the fact that a company has not paid withholding taxes for three quarters is not sufficient to present an obvious risk of nonpayment to a responsible party who is not directly involved in the accounting and disbursement of taxes. *See In re Macagnone,* 253 B.R. 99, 102 (M.D.Fla.2000) (determining that "[t]he three quarters in question were the first delinquencies in the life of [the company]" and that, "[w]hile it is true that [the responsible party] did not inquire about the status of the taxes, it is clear ... that his failure to do so, absent a history of delin-

quency, does not equal reckless disregard"). We therefore conclude that the Commission has not provided prima facie evidence that Stevenson recklessly disregarded known or obvious risks of nonpayment.

### B. Preference to Other Creditors

■ ¶18 Next, Stevenson challenges the ALJ's determination that he preferred the Bank of Utah over the state of Utah when he paid Tower's accounts receivable to the bank. Again, looking to federal law for guidance, we agree that a person has voluntarily and intentionally preferred other creditors over the government if he or she paid other creditors while he (1) "had actual knowledge of the specific tax delinquency for which the penalty was assessed" and (2) had "unencumbered funds available to pay the taxes at the time the taxes came due." *Ghandour v. United States,* 36 Fed. Cl. 53, 62 (1996) (emphasis omitted). Here, the first prong is met because Stevenson paid certain of Tower's creditors after he had actual knowledge that Tower had failed to pay withholding taxes. Whether the second prong is met depends on whether the funds Stevenson used were "unencumbered" at the time and could have been applied to the tax deficiency.

¶19 Federal courts have not agreed upon a uniform definition of "encumbered" in this context, but we rely on the definition offered in *Honey v. United States,* 963 F.2d 1083, 1090 (8th Cir.1992):

Funds are encumbered only where the taxpayer is legally obligated to use the funds for a purpose other than satisfying the preexisting employment tax liability and if that legal obligation is superior to the interest of the [government] in the funds.

*see also United States v. Kim,* 111 F.3d 1351, 1359 (7th Cir.1997) (adopting *Honey* definition); *In re Premo,* 116 B.R. 515, 535 (Bankr. E.D.Mich.1990) (adopting similar definition). However, "the fact that funds are subject to a security interest does not itself warrant a finding that the funds are 'encumbered.'" *In re Premo,* 116 B.R. at 536. Rather, funds only become encumbered once a secured creditor restricts the company's use of the funds or otherwise intervenes to prevent payment of taxes. *See Honey,* 963 F.2d at

1091–92 (determining funds were unencumbered when secured creditor had the option under the security agreement to restrict payment of secured funds, but did not exercise the option); *In re Premo*, 116 B.R. at 536 (determining funds were encumbered when secured creditor asserted control of accounts and only allowed payments for payroll and minimal operating expenses).

¶ 20 Stevenson testified that Tower had no money in its account when he discovered the tax deficiency. But the Commission argues that Stevenson had two sources of unencumbered funds available at the time and that he used both to pay creditors in preference to the government.

## 1. Personal Funds

¶ 21 First, the Commission argues that the $16,000 of Stevenson's personal funds he used to purchase subcontractor claims against Tower were unencumbered corporate funds because Stevenson had control over them and spent them to release the XO receivable for Tower's benefit. The Commission relies on *Sorenson v. United States*, 521 F.2d 325 (9th Cir.1975), for the proposition that personal funds used for business ends are transformed into unencumbered business funds for tax purposes. In *Sorenson*, the owner of a failing business "loaned" his personal funds to the business to pay net wages to employees. *See id.* at 327. The court held that these funds were "funds of the corporation" because they were "deposited to the corporate account" and used for corporate purposes, namely, "the payment of corporate obligations." *Id.* The court then determined that the funds were unencumbered because Sorenson *controlled them and could have easily applied them* to the withholding taxes for the wages he paid. *See id.*

¶ 22 We agree with the central holding of *Sorenson*, that funds placed at the disposition of a company become corporate funds regardless of their source, be it a bank or an owner of the company. We also agree that Stevenson's personal funds were used to benefit Tower by extinguishing the claims of subcontractors against it and facilitating XO's payment of its outstanding account. However, we cannot conclude that Stevenson

had the same type of control over these funds that Sorenson exercised. The court in *Sorenson* noted that Sorenson had both "the duty and responsibility" to assure that withholding taxes were paid and therefore had the discretion to "prorate such funds as [were] available between the Government and the employees." *Id.* at 327–29 (explaining that for every $100 Sorenson paid in wages, only $10 would be withheld, leaving employees with a claim, including interest, against the company for $11.11). Stevenson did not have a comparable responsibility to oversee the payment of wages or withholdings and, because his personal funds were used solely to facilitate payment of the XO account, we cannot impose on him an obligation to prorate some of those funds to the government. These funds were therefore not available to pay Tower's withholding taxes, and we deem them encumbered for purposes of our analysis.

## 2. XO Communications Account Receivable

¶ 23 Second, the Commission seems to presume that the $80,000 paid by XO was unencumbered without presenting evidence of the fact. The record indicates that the Bank of Utah had a secured interest in all of Tower's accounts receivable, including the XO accounts, but does not indicate to what degree the bank asserted its interest or sought to control the use of the funds. There is some evidence that the bank may have been aggressive about collecting; Stevenson testified that the Bank of Utah was "probably pushing more than anyone in terms of getting paid and that made a very precarious [situation] since I was an officer of the bank." Nonetheless, the extent of the Bank of Utah's efforts remains unknown. In order to present prima facie evidence that Stevenson preferred the Bank of Utah over the state, the Commission has the burden to present further evidence that the XO funds were unencumbered. In other words, the Commission must present evidence that the Bank of Utah declined to exercise its right to the XO funds and that Stevenson was free to apply a portion of the fund to pay Tower's tax obligation.

## CONCLUSION

¶ 24 In sum, the Commission has failed to present prima facie evidence that Stevenson willfully failed to pay Tower's withholding taxes, and we therefore reverse the ALJ's ruling. But, because we have defined the term "unencumbered funds" as an issue of first impression and because the record does not clearly address the issue, we remand the case to allow the Commission to present evidence that the XO funds were unencumbered. If proven, such a showing presents prima facie evidence of willfulness, *see* Utah Code Ann. § 59–1–302(7)(b), and the ALJ[2] may presume Stevenson's nonpayment was willful unless Stevenson presents rebuttal evidence. *See Black's Law Dictionary* 579 (7th ed.1999) (defining prima facie evidence as "[e]vidence that will establish a fact or sustain a judgment unless contradictory evidence is produced"); *Child v. Gonda,* 972 P.2d 425, 432 (Utah 1998) ("[P]rima facie evidence is 'that quantum of evidence that suffices for proof of a particular fact until the fact is contradicted by other evidence....'" (citation and alteration omitted)).

¶ 25 Because the type of evidence Stevenson must present to rebut the Commission's prima facie evidence is not defined by the statute or by Utah caselaw, Stevenson urges us to adopt the "reasonable cause" standard defined by the Tenth Circuit's en banc decision in *Finley v. United States,* 123 F.3d 1342, 1348 (1997). We agree that two aspects of that case are applicable here. First, we agree with the Tenth Circuit that, unless the Commission presents unrebutted prima facie evidence, the determination of willfulness is to be decided as a question of fact. *See id.* at 1346, 1348 (holding it essential that a taxpayer be allowed "to meaningfully distinguish his case before a jury based on the relative degree of willfulness or the presence of extenuating circumstances"). Second, we agree that a taxpayer may rebut evidence of willfulness by proving "reasonable cause;" namely, that "(1) the taxpayer has made reasonable efforts to protect the [withholding tax] trust funds, but (2) those

efforts have been frustrated by circumstances outside the taxpayer's control." *Id.* at 1348. Proof of "reasonable cause" was not specifically considered in the ALJ's ruling, but we conclude that it could, if proven, provide a defense to prima facie evidence of willfulness.

¶ 26 Accordingly, we reverse and remand for proceedings consistent with this opinion.

¶ 27 WE CONCUR: JUDITH M. BILLINGS, Presiding Judge and RUSSELL W. BENCH, Associate Presiding Judge.

---

2.  Of course, the same procedure would apply in a district court proceeding. District courts "have jurisdiction to review by trial de novo all decisions issued by the [tax] commission ... resulting from formal adjudicative proceedings." Utah Code Ann. § 59–1–601(1) (2004).