Stephen R. RYKOFF, Plaintiff–Counter–
Defendant–Appellee,

v.

UNITED STATES of America,
Defendant–Counterclaimant–
Appellant.

No. 93–55363.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 6, 1994.

Decided Nov. 14, 1994.

Nancy G. Morgan, Ann B. Durney, Tax
Div., U.S. Dept. of Justice, Washington, DC,
for defendant-counterclaimant-appellant.

Bruce I. Hochman, Charles P. Rettig,
Joanna Tulio, Hochman, Salkin & DeRoy,
Beverly Hills, CA, for plaintiff-counter-defen-
dant-appellee.

Before FLETCHER, BOOCHEVER, and
FERNANDEZ, Circuit Judges.

BOOCHEVER, Circuit Judge:

The United States appeals the district
court's judgment that Stephen Rykoff did not
act "willfully," within the meaning of 26
U.S.C. § 6672, in failing to pay delinquent
withholding taxes during the period begin-
ning February 12, 1982, until his resignation
on March 18, 1982. We affirm.

## BACKGROUND

Stephen R. Rykoff ("Rykoff") was President of Fox Drilling Company ("Fox"). Fox was owned equally by Rykoff and Jason Fox, who was the company's CEO and Chairman of the Board.

Toward the end of 1981 and the beginning of 1982, Fox began to experience financial difficulties. Fox secured loans from the Fourth National Bank of Tulsa ("Bank"), which held a security interest in all of Fox's assets and receivables for loan advances totalling approximately $984,200 as of December, 1981. Fox failed to make complete withholding tax deposits for the fourth quarter of 1981, and for the first and second quarters of 1982. These deposits were insufficient by $305,288.

On February 12, 1982, Rykoff and Jason Fox attended a meeting with Bank officials to discuss Fox's severe financial problems, including its delinquent employment tax liabilities. Prior to that date, the Bank had notified Fox's primary customer, Sanguine, Ltd., to withhold payment of its $296,222 obligation to Fox. Rykoff negotiated an arrangement with the Bank that Fox would not seek bankruptcy protection provided the Bank agreed to honor checks drawn against the Sanguine receivables to satisfy the employment tax obligations. The agreement was memorialized on March 5, 1982, in a letter agreement ("March 5 Letter Agreement") which provided in relevant part:

> [U]pon execution of the Loan Agreement and other documents associated therewith, all pursuant to the letter agreement, then Bank will deliver to [Fox] a letter addressed to Sanguine, Ltd. authorizing Sanguine, Ltd. to make payment of its account payable owed to [Fox] directly to [Fox]. In this regard, it is Bank's further understanding that any check or proceeds received from Sanguine, Ltd. will immediately be deposited with Bank and that no checks will be drawn against such proceeds until such time as all documentation relating to the Loan Agreement has been executed ...; *provided, however, that Bank*

has agreed to honor checks drawn against the Sanguine, Ltd. proceeds for the payment of payroll taxes. (Emphasis added).

A few days after the meeting, on February 16, 1982, the Bank unilaterally withdrew $187,828 from the Fox account, leaving a balance of 96¢. After execution of the March 5 Letter Agreement, Rykoff delivered to Sanguine the Bank's authorization for the release of the $296,222. Pursuant to the Letter Agreement, Rykoff, upon receiving those funds from Sanguine, deposited them in the Bank on March 16, 1982. Without Rykoff's knowledge, however, the Bank withdrew $314,379 from the Fox account the next day, leaving a negative balance of $30,838.

After execution of the March 5 Letter Agreement, Jason Fox and the Bank informed Rykoff that they wanted him to resign. On March 18, 1982, Rykoff resigned and, as his last official act, executed a loan and security agreement with Jason Fox and the Bank providing, *inter alia*, that the Bank would extend additional credit to Fox, that the Bank would retain a security interest in Fox's assets and accounts receivable, and that Fox could not pay any past-due payroll taxes without the prior written consent of the Bank.[1] During the period between the February 12 meeting and Rykoff's resignation, Fox received approximately $300,000 in funds other than the Sanguine receivables. Checks were drawn on these funds to pay for Fox's expenses.

Rykoff was assessed in the amount of $212,782 as a responsible person under 26 U.S.C. § 6672 for willful failure to pay over federal income and social security taxes withheld from the wages of Fox's employees for the last two quarters of 1981 and the first quarter of 1982. At his bench trial on May 26, 1992, Rykoff conceded liability for the assessed taxes up to the time of the February 12, 1982 meeting. For the balance of the first quarter of 1982, however, Rykoff took the position that he was prevented from paying the taxes by the Bank's acts of withdraw-

---

1. The district court determined that this consent had already been given in the March 5 Letter Agreement.

ing funds from Fox's account in violation of the March 5 Letter Agreement.

The district court found that Rykoff was liable for the assessments at all times before February 12, 1982. For the period between February 12, 1982, and his resignation on March 18, 1982, however, the court found that Rykoff did not willfully fail to pay the delinquent withholding taxes because he "was prevented from discharging such responsibilities by the actions of the Bank." The district court therefore concluded that Rykoff was liable for the § 6672 penalty only for the period up to February 12, 1982, and entered a judgment to that effect. We affirm.

## DISCUSSION

The Internal Revenue Code requires employers to withhold federal income and social security taxes from employees' wages. 26 U.S.C. §§ 3102, 3402. The employer holds these funds "in trust" for the United States, 26 U.S.C. § 7501(a), and pays them over quarterly. When a responsible corporate employer willfully fails to pay over the trust funds, 26 U.S.C. § 6672 imposes a penalty on the employer equal to the entire amount of the unpaid taxes.

Section 6672 of the Internal Revenue Code provides, in relevant part:

Any person required to collect, truthfully account for, and pay over any tax ... who willfully fails to collect such tax, or truthfully account for and pay over such tax ... shall ... be liable to a penalty equal to the total amount of the tax ... not collected, or not accounted for and paid over.

26 U.S.C. § 6672.

In order for a party to be liable for a penalty for failure to pay over taxes under § 6672, two requirements must be met: (1) the party must have been a "responsible person," *i.e.*, one required to collect, truthfully account for, and pay over the tax, and (2) the party must have "willfully" failed to pay the tax. *Teel v. United States,* 529 F.2d 903, 905 (9th Cir.1976).

All the parties agree that Rykoff was a responsible person under § 6672. The dispute is over whether he willfully failed to pay

the withholding taxes for the period between the February 12, meeting and his resignation on March 18, 1982. Once it has been established that Rykoff is a responsible person, he has the burden of proving lack of willfulness. *See Williams v. United States,* 931 F.2d 805, 810 (11th Cir.1991); *Oliver v. United States,* 921 F.2d 916, 919–20 (9th Cir.1990).

Willfulness, within the meaning of § 6672, has been defined as a " 'voluntary, conscious and intentional act to prefer other creditors over the United States.' " *Klotz v. United States,* 602 F.2d 920, 923 (9th Cir.1979) (quoting *Sorenson v. United States,* 521 F.2d 325, 328 (9th Cir.1975)). An intent to defraud the Government or other bad motive need not be proven. *Id.*

The district court determined that Rykoff's actions did not constitute willful failure to pay over the taxes because he was prevented from discharging that duty by the actions of the Bank for the period between February 12 and March 18.

■ Whether a person has willfully failed to pay over withholding taxes is a question of fact, the determination of which we review for clear error. *See Klotz,* 602 F.2d at 923; *Dudley v. United States,* 428 F.2d 1196, 1200 (9th Cir.1970).

The Government argues, however, that willfulness is a question of law that requires de novo review. In support of its argument, the Government cites *Purcell v. United States,* 1 F.3d 932 (9th Cir.1993), in which the court held that where a company's president "paid out corporate funds to numerous other creditors," "knowing that the Company had not remitted to the government the taxes withheld," willfulness was established "as a matter of law." *Id.* at 938. *Purcell* does not strictly apply, however, because *Purcell* did not involve a situation where, as here, other bona fide arrangements for payment of the taxes had been made.

The court in *Purcell* was not addressing the issue of the appropriate standard of review. Rather, the court was defining what conduct constitutes willfulness as a matter of law. The definition of willfulness certainly is a legal issue subject to de novo review.

Whether the facts in any one case fit within that definition, however, is a question of fact. Therefore, whether Rykoff acted willfully with respect to the failure to pay over the taxes involves a factual determination which is reviewed under the clearly erroneous standard. Under this standard, a district court's findings of fact may not be overturned unless the appellate court is left with the "definite and firm conviction that a mistake has been committed." *United States v. Ramos,* 923 F.2d 1346, 1356 (9th Cir.1991).

We conclude that the district court did not clearly err in finding that Rykoff did not willfully fail to pay over the withholding taxes for the period between the February 12 meeting and his resignation on March 18. The court noted that as of February, the Bank had notice of Fox's delinquent tax liabilities and had the power to "shut Fox down at any time." The court found that "[d]ue to the involvement of the Bank on and after February 12, 1982, Fox was unable to be flexible in its operations," and the Bank thereby "prevented ... Rykoff from being able to have Fox satisfy its employment tax obligations." The court also believed that from February 12 until his resignation, "Rykoff displayed a great concern for satisfaction of the delinquent employment tax obligations" and exercised "his best efforts ... to assure payment of [them]."

Evidence in the record supports these findings. From the February 12, 1982 meeting, the Bank had actual notice of the delinquent taxes. Rykoff testified that on February 16, 1982, he sent the controller of Fox to the Bank to make a withholding tax deposit of $11,405. The Bank, however, had unilaterally withdrawn $187,828 from the account, leaving a 96¢ balance and rendering the payment of the tax deposit impossible. Furthermore, without Rykoff's knowledge and contrary to the terms of the March 5 Letter Agreement, which provided for the payment of the taxes with the Sanguine receivables, the Bank withdrew $314,379 from the account (leaving a negative balance of $30,838) the day after the Sanguine receivables were deposited.

We agree with the Government that the fact that a bank exercises significant control over payments to creditors does not necessarily absolve the corporate officer of liability under § 6672. *See McDonald v. United States,* 939 F.2d 916, 919 (11th Cir. 1991) (per curiam), *cert. denied,* —— U.S. ——, 112 S.Ct. 1669, 118 L.Ed.2d 389 (1992); *Commonwealth Nat'l Bank v. United States,* 665 F.2d 743, 757–58 (5th Cir.1982). Nevertheless, in this case, Rykoff's insistence on the provision in the March 5 Letter Agreement for honoring the tax payments, and the fact that he was unable to make the payments because of the Bank's unilateral withdrawal of funds, supports the district court's finding that he did not act willfully for purposes of § 6672.

Rykoff's testimony suggested that he threatened to file a bankruptcy petition for Fox unless the Bank agreed to give priority to the payment of the taxes. The Bank agreed to do so in the March 5 Letter Agreement but then prevented payment by withdrawing all the funds. The testimony also indicated that the Bank and Jason Fox then forced the resignation of Rykoff, who was the Fox official struggling to assure payment of the taxes.

From these facts, it was not clearly erroneous for the district court to find that the Bank possessed and exercised so much control over Fox's accounts that it effectively prevented Rykoff from fulfilling his obligations under § 6672.

The Government argues, however, that there were ample funds apart from the Sanguine receivables which could have been used to pay the delinquent taxes. Bank statements for the relevant period between February 12 and March 18, reveal that Fox received approximately $300,000 in funds other than the Sanguine receivables, and these funds were not used to pay the taxes.

We believe, however, that once the Bank agreed that the Sanguine receivables could be used to pay the tax obligations, the use of the other funds for other purposes was not a willful failure on Rykoff's part to pay the taxes. As the district court found, the Bank's extensive control over Fox's accounts "prevented ... Rykoff from being able to

have Fox satisfy its employment tax obligations."

The Government maintains that the fact that Rykoff negotiated an agreement with the Bank to release the Sanguine funds for the tax payments does not release him from liability. In support of its argument, the Government cites *Bowen v. United States,* 836 F.2d 965 (5th Cir.1988), in which the court refused to accept a "reasonable expectation of sufficient funds at a later date as a defense to a charge of willful[ness]." *Id.* at 968.

In *Bowen,* a corporation's president decided to delay remittal of the withholding tax payments because the corporation's bank informed him that the penalties and interest resulting from the late tax remittal would be less than the interest the bank would charge for lending the money to pay the taxes right away. The bank assured him that it would loan him the funds to pay the taxes when the IRS finally demanded payment, and he decided not to remit the taxes on the basis of that assurance. The bank subsequently informed him that the loan needed to pay the taxes would not be forthcoming. Even after learning of this credit termination, the president continued to use funds received by the corporation to pay other creditors. The court held that the president's reasonable expectation that a loan from the bank would be forthcoming when the IRS made demand for payment would not shield him from liability for willful failure to pay over the taxes. *Id.* at 967–68.

In the present case, Rykoff had much more than the Bank's assurances that the taxes could be paid with the forthcoming Sanguine receivables; Rykoff had the Bank's written guarantee to honor tax payments from those funds. In *Bowen,* the corporate president deliberately failed to remit the taxes even after being informed that the bank would not provide a loan to pay the delinquent tax obligations. The instant case involves no such refusal to pay on Rykoff's part. When Rykoff made specific arrangements with the Bank to honor checks drawn against the Sanguine funds for the payment of taxes, and when the Bank breached the agreement by withdrawing those funds immediately after they were deposited, the Bank effectively prevented Rykoff from fulfilling his duty to meet the tax obligations. It was not clear error for the district court to find that Rykoff's conduct did not constitute a willful failure to pay over the withholding taxes.

Accordingly, we affirm the judgment of the district court.

AFFIRMED.