Steven ROCHA, Rocha Enterprises
Inc. and Aloha Sheet Metal,
Inc. Plaintiffs,

v.

UNITED STATES of America
Defendant.

No. CIV 00–72–HU.

United States District Court,
D. Oregon.

March 26, 2001.

William D. Bailey, Lake Oswego, OR, for Plaintiffs.

Kristin Olson, United States Attorney, Portland, OR, Jian H. Grant, Trial Attorney, Tax Division, U.S. Department of Justice, Washington DC, Kevin P. O'Connell, O'Connell Hval & Fraser LLP, Portland, OR, for Defendant.

## OPINION AND ORDER

HUBEL, United States Magistrate Judge.

This matter is before the court on defendant's motion for summary judgment (# 21). For the following reasons, defendant's motion is granted in part and withdrawn in part.

## BACKGROUND

### I. Rocha Enterprises, Inc. dba Portland Mechanical Systems

Plaintiff Rocha Enterprises, Inc. (REI) was a painting contractor solely owned and operated by plaintiff Steven Rocha (Rocha). Rocha also performed bookkeeping and payroll services for other companies which he invoiced through REI.

Prior to 1992, Portland Mechanical Corporation (PMC), a sheet metal business, was one of Rocha's bookkeeping and payroll clients. In 1992 PMC experienced increased workers compensation rates and believed that it could no longer be competitive in the bid process for sheet metal work. Therefore, Rick Mercer, president and sole shareholder of PMC, approached Rocha to enter into an agreement in which Rocha would provide payroll services for PMC as before, but REI would "hire" PMC's employees to provide the labor on PMC's projects thus taking advantage of REI's more favorable worker's compensation rates. In return PMC would pay Systems for its payroll services.[1]

Rocha agreed to Mercer's plan, although they did not draft or sign a written agreement. In order to accomplish the plan, REI registered an assumed business name, Portland Mechanical Systems (Systems).[2] Systems then employed the former employees of PMC, but PMC continued to bid and contract for work for these employees in PMC's name.

Mercer hired, fired, and set wages for the former PMC employees. PMC also billed and collected the receivables generated by PMC's work. All of the income from PMC's projects went into PMC's bank account from which PMC paid all of its overhead costs, materials and expenses other than payroll. Rocha continued to prepare the paychecks and payroll withholding and tax deposit checks for the former PMC workers. However, Rocha drew the paychecks and the payroll withholding and tax deposit checks on a separate Systems bank account established solely for this purpose. Rocha prepared and signed payroll tax returns and made out and signed checks for payment of the payroll taxes drawn on the Systems bank account.

Rocha also prepared checks, which he was not authorized to sign, made payable

---

[1] Essentially, Systems would act as an employment agency for PMC.

[2] Although Rocha registered a dba for Systems, Systems was never a separate entity from REI. Systems was not a separate corporation, nor did Rocha file separate tax returns for Systems.

to Systems and drawn on PMC's bank account, to cover the payroll and associated payroll costs including the withholding taxes. Rocha then submitted the unsigned checks to Mercer for Mercer to sign and return to Rocha for deposit in the Systems account. If Mercer did not sign and release the checks, the Systems account was unfunded. On payday, Mercer would sign and release the PMC checks for deposit to the Systems account in an amount sufficient to cover paychecks, net of the withholding and taxes. The following month, on or before the due date for the withholding and tax payment, PMC paid Systems an amount sufficient to cover the taxes.

Mercer failed to sign checks to cover the tax payments in 1993, but did sign checks to cover employee wages. Rocha began working with the Internal Revenue Service (IRS) and Systems paid the first quarter taxes by July 31, 1993. Systems paid the second quarter taxes by September 20, 1993.[3] In November, 1993, Mercer again failed to release funds sufficient to satisfy the balance due for third quarter taxes and released no funds for the fourth quarter taxes. Rocha notified Mercer that he would no longer prepare and issue further net paychecks or pay other payroll related expenses for the PMC workers through Systems until the taxes were paid.

Rocha told the IRS about the payroll arrangement between Systems and PMC and that PMC had substantial accounts receivable sufficient to satisfy the unpaid tax liability. Rocha informed the IRS agent that PMC owed Systems in excess of $109,000 for payroll taxes outstanding and in accounting fees. Rocha requested that the IRS levy the amount due Systems from PMC's assets and apply the levy to the unpaid payroll taxes.

Mercer agreed to liquidate PMC and sought the advice of attorney John Hanson. Hanson advised Mercer to sell the assets of PMC, on installment, to a newly formed corporation, Aloha Sheet Metal, Inc.. (ASM), to be owned and operated by Mercer and Rocha. PMC would then assign the installment payments to the government to satisfy the tax obligation. On December 31, 1993, PMC ceased operations and changed its name to Baseline, Inc. (Baseline) for the purposes of winding up.

In January 1994, all of the assets of PMC, other than the accounts receivable, were transferred to ASM for the purchase price of $150,000. In return, ASM signed an installment promissary note for $150,000.[4] Hanson prepared an Assignment for the Benefit of Creditors, signed by Mercer as president of Baseline/PMC, which recited that Baseline assigned all of its assets to Hanson, in trust, for payment of claims, including payroll taxes owed by Systems. Mercer also signed an Assignment prepared by Hanson which assigned the ASM note to Baseline to Hanson's client trust account for the benefit of the IRS, Oregon Department of Revenue, and the Oregon Employment Department.

The IRS agent agreed with Hanson that the IRS would accept the assignment of the payments on the ASM note. Accordingly, the IRS did not levy the equipment and receivables of PMC. However, Hanson's installment payments to the IRS stopped in December, 1994, after only four payments. On April 16, 1995, the IRS sent a final demand to PMC for levy of amounts owed to Systems. By that time Mercer had collected or written off over $100,000 of PMC's receivables.

---

**3.** Rocha alleges that the IRS misapplied this payment despite Rocha's statement designating the payment for the second quarter.

**4.** At this time, the tax obligation of Systems was approximately $44,000.

## II. Aloha Sheet Metal

Plaintiff concedes that he is a responsible party with respect to ASM for payment of payroll taxes. However, plaintiff denies that he willfully failed to pay the payroll taxes due.

From July 1994, through December 1994, ASM made the installment payments to Hansen and Hanson to the IRS pursuant to the Assignment agreement. In January 1995, Rocha learned that Mercer was personally collecting the receivables of AMS and not giving them to Hanson. Accordingly, after December, 1994, ASM fell behind in its withholding and was unable to continue to make payments on the note assigned to pay Systems' payroll taxes.

Upon learning that Mercer was no longer forwarding payments to Hanson, Rocha decided to close down ASM and liquidate its assets to satisfy the tax obligations of ASM and PMC. In order to institute his plan, Rocha acquired a majority of ASM's stock from shareholders other than Mercer and retained an attorney for advice in liquidating ASM's assets.

Rocha and his attorney contacted the IRS and arranged for the surrender of all ASM assets.[5] Rocha turned over to the IRS agent the lists of accounts receivable and equipment. Rocha then proceeded to close up the ASM business. However, prior to the IRS levies in April, 1995, Mercer seized some ASM assets and collected several ASM receivables for his own benefit. Rocha also alleges that although other receivables were paid to the IRS, the IRS did not apply those to reduce Rocha's trust fund debt.

The IRS assessed a penalty against REI, Rocha, and ASM for unpaid payroll taxes pursuant to 28 U.S.C. § 6672. Rocha paid the penalty and plaintiffs filed this action for refund of the payments. Defendant's motion for summary judgment on plaintiffs' claims are now before the court.

### STANDARD

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party bears the initial responsibility of informing the Court of the basis of its motion, and identifying those portions of " 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)).

"If the moving party meets its initial burden of showing 'the absence of a material and triable issue of fact,' 'the burden then moves to the opposing party, who must present significant probative evidence tending to support its claim or defense.' " *Intel Corp. v. Hartford Acc. & Indem. Co.,* 952 F.2d 1551, 1558 (9th Cir. 1991) (quoting *Richards v. Neilsen Freight Lines,* 810 F.2d 898, 902 (9th Cir.1987)). If "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.' " *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

All reasonable doubts as to the existence of a genuine issue of fact must be resolved against the moving party. *Matsushita Elec. Industrial Co.,* 475 U.S. at 587, 106

---

5. ASM's assets had an approximate value of $290,000. ASM owed $45,153 in withholding taxes and Systems owed $39,601.

S.Ct. 1348. If the factual context makes the non-moving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support his claim than would otherwise be necessary. *Id.; In re Agric. Research and Technology Group,* 916 F.2d 528, 534 (9th Cir.1990); *Cal. Architectural Bldg. Prod., Inc. v. Franciscan Ceramics, Inc.,* 818 F.2d 1466, 1468 (9th Cir.1987), *cert. denied,* 484 U.S. 1006, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988).

## DISCUSSION

The Internal Revenue Code (IRC) requires employers to withhold federal income and social security taxes from the wages and salaries paid to their employees. 26 U.S.C. §§ 3101(a), 3102(a), 3402(a). Employers must withhold taxes every pay period and make payment to the government at least on a quarterly basis. *Id.* Prior to the time employers pay the withholding to the government, withheld taxes constitute a special fund held in trust for the government. 26 U.S.C. § 7501(a); *Purcell v. United States,* 1 F.3d 932, 936 (9th Cir.1993).

■ If an employer withholds trust fund taxes, but fails to pay them over to the United States, the employee who earned the wages is nevertheless credited with having paid the taxes and the government may not require any additional payment from the employee. *Slodov v. United States,* 436 U.S. 238, 243, 98 S.Ct. 1778, 56 L.Ed.2d 251 (1978). In order to ensure that withheld taxes are collected and paid over to the government, Congress enacted 26 U.S.C. § 6672, which permits certain responsible persons to be held liable for an employer's unpaid trust funds.

Section 6672 provides in pertinent part: Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails

to collect such tax, truthfully account for and pay over such tax ... shall ... be liable to a penalty equal to the total amount of the tax ... not collected, or not accounted for and paid over.

26 U.S.C. § 6672(a). The code defines a "person" for the purposes of § 6672 as including "an officer or employee of a corporation or member or employee of a partnership, who as such officer, employee, or member is under a duty to perform the act in respect of which a violation occurs." 26 U.S.C. § 6671.

■ In a case involving penalty assessments made pursuant to 26 U.S.C. § 6672, once the government introduces proof of the assessment, the taxpayer must prove either that he was not a responsible party during the time periods at issue or that he did not act willfully in failing to collect or to pay the withholding taxes. *Oliver v. United States,* 921 F.2d 916, 919–20 (9th Cir.1990). The parties do not dispute that the defendant has produced Certificates of Assessment and Payments to establish the civil penalties assessed against plaintiffs. Accordingly, the burden shifts to Rocha to show either that he was not a responsible person or that he did not willfully fail to pay the taxes at issue.

### I. Responsible Person

Rocha concedes that he was a responsible person with respect to ASM, but contends that he was not a responsible person with respect to PMC and Systems.

■ "Under § 6672, persons responsible have the 'final word as to what bills should or should not be paid and when.'" *United States v. Jones,* 33 F.3d 1137, 1139 (9th Cir.1994). The Ninth Circuit has found individuals more likely to be responsible parties if they (1) hold an office or own stock of a corporation; (2) manage the daily operations of the business; (3) make

decisions regarding the disbursement of funds and payment of creditors; (4) have check-signing authority; (5) have authority to sign tax returns; and (6) can hire and fire employees. *Alsheskie v. United States*, 31 F.3d 837, 840 (9th Cir.1994) (citations omitted). This is not a determinative list, but a list of factors for consideration. The Ninth Circuit has explained that "the duty to ensure that withheld employment taxes are paid over flows from the authority that enables one to do so." *Purcell v. United States*, 1 F.3d 932, 937 (9th Cir.1993) (citing *Raba v. United States*, 977 F.2d 941, 943 (5th Cir.1992)) ("The crucial examination is whether a person had the 'effective power to pay taxes.' ").

■ The parties do not dispute the facts of plaintiff's duties and abilities as the owner and shareholder of REI, doing business as Systems. In particular, the parties agree that Rocha (1) had check signing ability on the Systems account; (2) prepared the paychecks and payroll withholding and tax deposit checks for the former PMC, now Systems, workers; (3) prepared and signed payroll tax returns and made out and signed checks for payment of the payroll taxes drawn on the Systems bank account; (4) continued to pay the former PMC, now Systems, worker's salaries after he was aware that Systems was behind in its payroll tax payments; (5) did not hire, fire, or set wages for the former PMC employees; and (6) did not bill or collect the receivables generated by PMC's work. Although Rocha did not have the authority to hire and fire or to set wages, it is undisputed that Rocha had the ultimate responsibility to pay wages and taxes and to complete and file the payroll tax forms. After a review of the criteria and Rocha's responsibilities, the court finds that Rocha had sufficient control over the funds of

Systems to be considered a responsible party absent special circumstances.

Rocha contends that because he was only able to pay the taxes when Mercer properly funded the Systems account, he was not a responsible party. Rocha cites two cases in support of his argument. However, these cases are unpersuasive.

In *United States v. Jones*, the court held that a landlord of property on which the defaulting business was located and a consultant to the defaulting business who did not have any control over the defaulting business' finances were not responsible parties pursuant to § 6672. *Jones*, 33 F.3d at 1140, 1141. The court reasoned that neither the landlord nor the consultant were shareholders, officers, or directors of the defaulting company, neither had the duty or authority to pay the payroll taxes or to account for these taxes, and neither of them exercised any control over which creditors were paid. *Id.* The situation in *Jones* is distinguishable from that in this case. Here, Rocha had both the duty and the authority to pay the payroll taxes and the payroll itself.

The second case cited by Rocha is *Alsheskie v. United States*, 31 F.3d 837 (9th Cir.1994). In *Alsheskie*, the nonpaying company, Lion Manufacturing (Lion) defaulted on a financing contract with Commercial Financial Services. *Id.* at 838. Commercial then took possession of Lion's assets and continued Lion's operations. *Id.* at 839. Under the financing agreement between Commercial and Lion, Lion turned over all checks received to Commercial who then returned 20% of the funds to Lion. *Id.* Lion used these funds to pay employees's wages, but not Lion's tax obligations. *Id.* Plaintiff was aware of the delinquent taxes, but was reassured by Commercial that Commercial would take care of the tax problems "later." *Id.* The Ninth Circuit upheld a district court con-

clusion that plaintiff, the president of Lion, was not a responsible party. *Id.* at 839. However, the Ninth Circuit pointed to the fact that plaintiff was an employee of Lion not an owner during the tax periods at issue, therefore, his authority to pay bills was limited by the parent company and the financing arrangement. *Id.* It is undisputed that Rocha was not merely an employee of Systems. He was Systems' sole owner and officer. Rocha's relationship with PMC was as a service provider with a client. Therefore, the facts and ruling in *Alsheskie* are not helpful or persuasive in this case.

Moreover, the Ninth Circuit has noted that "[i]nstructions from a superior not to pay taxes do not . . . take a person otherwise responsible under section 6672(a) out of that category." *Purcell,* 1 F.3d at 937 (quoting *Brounstein v. United States,* 979 F.2d 952, 955 (3rd Cir.1992)); *see also Thibodeau v. United States,* 828 F.2d 1499, 1504 (11th Cir.1987) ("an otherwise responsible person cannot be relieved of [his] obligation when directed by another person not to pay the taxes"). " '[T]he key to liability under section 6672 is the power to control the process by which the employer corporation allocates funds.' " *Purcell,* 1 F.3d at 937 (quoting *O'Connor v. United States,* 956 F.2d 48, 51 (4th Cir.1992)). Although Rocha relied on Mercer to write checks to fund the Systems account, what Rocha did with the funds once they were signed over remained solely Rocha's decision. Rocha maintained the power to allocate how the funds received from Mercer were used. Rocha maintained the final word as to whether he should use the funds to pay the taxes or to continue to pay employees or other creditors. In concrete terms, when Mercer failed to give Rocha enough money to pay the taxes, but funded the next month's wages, Rocha had the authority to decide whether to use those funds to pay the taxes or the em-

ployees' wages. Accordingly, Rocha was a responsible party pursuant to section 6672.

## II. Willful

■ Willfulness pursuant to section 6672 is defined as a "voluntary conscious and intentional act to prefer other creditors over the United States." *Rykoff v. United States,* 40 F.3d 305, 307 (9th Cir. 1994) (quotations omitted). "An intent to defraud the Government or other bad motive need not be proven." *Rykoff,* 40 F.3d at 307 (citations omitted). "The question of willfulness is a factual one and if sufficiently controverted, would preclude the granting of summary judgment on penalty liability." *Teel v. United States,* 529 F.2d 903, 905 (9th Cir.1976). However, "as the court held in *Teel* . . . evidence that the responsible person had knowledge of payments to other creditors after he was aware of the failure to pay withholding tax [may be] sufficient for summary judgment on the question of willfulness." *Howard v. United States,* 711 F.2d 729, 735 (5th Cir. 1983). Moreover, if the question is not sufficiently controverted and no reasonable juror could conclude other than Rocha willfully failed to pay taxes, the court may grant defendant's motion for summary judgment. *Barnett v. United States,* 594 F.2d 219 (9th Cir.1979); *Teel v. United States,* 529 F.2d 903 (9th Cir.1976).

The Ninth Circuit has held that use of corporate revenues to pay creditors rather than to reduce a corporation's tax debt is willful within the meaning of 6672. *See Purcell,* 1 F.3d at 938. Moreover, "[e]mployees to whom wages are owed are but a particular type of creditor." *Sorenson v. United States,* 521 F.2d 325, 328 (9th Cir. 1975). "There is no basis in law for preferring the wage obligation to [employees] over the withholding obligation to the Government." *Id.* Furthermore, "[i]t is no excuse that, as a matter of sound business

judgment, [revenues] w[ere] paid to suppliers and for wages in order to keep the corporation operating as a going concern— the government cannot be made an unwilling partner in a floundering business." *Collins v. United States,* 848 F.2d 740, 741–42 (6th Cir.1988).

 Rocha testified in his deposition that at the time that Systems was not paying the payroll taxes, Systems continued to receive funds to pay the employees' salaries and that Systems did pay those salaries as well as creditors other than the IRS, those creditors who "were screaming the loudest." Rocha Depo. p. 38. Plaintiffs argue in their response that Rocha could not use the funds delivered to Systems by Mercer to pay the taxes because doing so "would have been tantamount to stealing the funds" because Mercer did not authorize the funds to be used in that manner. However, as the court noted earlier, instructions from a superior not to pay taxes are not sufficient. *Purcell,* 1 F.3d at 937. The Ninth Circuit has held that "the payment of net wages in circumstances where there are no available funds in excess of net wages from which to make withholding is a willful failure to collect and pay over under section 6672." *Sorenson,* 521 F.2d at 328. The parties do not dispute that Rocha continued to pay employees' wages at the time that Systems and ASM owed taxes and that Rocha was aware that taxes were owed.

Rocha cites *Rykoff* in support of his contention that Mercer's control of the funds relieves Rocha of liability under § 6672. However, the facts of *Rykoff* differ in significant aspects to those in this case. In *Rykoff,* plaintiff, president of the defaulting company, Fox Drilling Company (Fox), met with bank officials to discuss Fox's severe financial problems including its inability to pay payroll taxes. *Rykoff,* 40 F.3d 305, 306 (9th Cir.1994). Prior to

the meeting, the bank had directed Fox's primary customer, Sanguine, to withhold payment of a large receivable due Fox. *Id.* Plaintiff and the bank negotiated an arrangement in which Fox would not seek bankruptcy protection if the bank agreed to honor checks written to satisfy Fox's tax liabilities drawn against the Sanguine receivable. *Id.* The bank and plaintiff negotiated a written agreement which specifically stated "provided however, that Bank has agreed to honor checks drawn against the Sanguine, Ltd. proceeds for the payment of payroll taxes." *Id.* Despite this agreement, the bank withdrew virtually all of the Sanguine funds to pay Fox's debt to the bank leaving Fox without funds to pay payroll taxes. *Id.* The court noted that "the fact that a bank exercises significant control over payments to creditors does not necessarily absolve the corporate officer of liability under § 6672." *Rykoff,* 40 F.3d at 308. However, the court held that plaintiff's insistence on the provision in the agreement regarding tax payments and plaintiff's inability to pay any debts, including the tax debt, due to the bank's unilateral withdrawal of funds in contravention of the agreement, supported the district court's finding that plaintiff did not act willfully under § 6672. *Id.* The court also held that the district court did not err in finding that "the Bank's written assurances that the taxes could be paid with the forthcoming Sanguine receivables" excused plaintiff's payment of other creditors with other revenue. *Id.* at 309.

In the case at hand, there was no written agreement between Rocha and Mercer regarding payment of funds. Similarly, there is no evidence that Mercer suggested that certain receivables could be used to pay the tax debt. To the contrary, Rocha argues that Mercer refused to provide sufficient funds to pay the tax debt, but Mercer did pay wages into the Systems account when taxes were owing. Fi-

nally, in *Rykoff*, the bank's withdrawal of funds left plaintiff without any funds to pay the tax liability or other creditors, this is not the case here. The parties agree that Mercer continued to sign checks to fund the Systems account to pay the employees and that Rocha paid employees and other creditors at the time he knew payroll taxes were unpaid. Accordingly, *Rykoff* is unhelpful to plaintiff in this matter.

A review of the law and facts of this case reveals that no reasonable juror could conclude that Rocha did not willfully fail to pay payroll taxes. Therefore, defendant is entitled to summary judgment on the issue of Systems and PMC.

■ With respect to his roll in ASM, Rocha makes the additional argument that because he took reasonable steps to turn over the assets of ASM to the IRS, but the taxes were not satisfied out of ASM's assets due to the inaction and errors of the IRS, he did not willfully fail to pay taxes. However, "the liability of a responsible person imposed by § 6672 is separate and distinct from [that] imposed upon the employer." *Balzer v. United States*, 2000 WL 1130075, *6 (N.D.Cal.2000) (quotations omitted). "[T]he IRS is not obligated to pursue the assets of the corporation before pursuing responsible persons." *Id. See also Reph v. United States*, 615 F.Supp. 1236, 1242 (N.D.Ohio 1985) ("The [IRS] need not attempt collections of the tax assessment from the corporate employer before asserting the personal liability of a responsible person. In addition, as the liability of the employer is separate and distinct from that of the responsible person, the United States' lack of due diligence against the employer would not relieve the responsible person's liability."); *United States v. De Beradinis*, 395 F.Supp. 944, 953 (D.Conn.1975) ("it is no defense to a responsible person penalty to claim that the United States failed to take collection action activity against assets in the possession of a third party."). Accordingly, the court in held that "the IRS was not required to attempt collection from the corporation before attempting collection from plaintiffs as responsible persons ...." *Balzer*, 2000 WL 1130075 at *6. The court agrees.

The tax liability of ASM is separate and distinct from Rocha's liability as a responsible person. The IRS' conduct with respect to levying on ASM's assets in order to satisfy the unpaid payroll taxes does not relieve Rocha of liability in this matter. The IRS' conduct does not negate Rocha's knowledge that the payroll taxes were not being paid, that Rocha failed to pay the taxes and that Rocha continued to pay other creditors and employees.

Plaintiff cites a number of cases in support of his argument regarding the willfulness element. However, the court finds these cases distinguishable and unconvincing. For example, in *Mangieri v. United States*, the District of Maryland declined the government's motion to alter the judgment entered by the jury in plaintiff's favor. Although the decision recited the jury's determination that plaintiff did not willfully fail to pay, the court did not review that determination. Rather the court evaluated the amount of damages to be properly awarded plaintiff. The analysis and discussion in *Mangieri* is irrelevant to the case at issue here. Similarly, in *Tozier v. United States*, 65–2 USTC P 9621 (W.D.Wash.1965), the court found that plaintiff did not willfully fail to pay taxes because he did not pay any creditors during the time period in question, much less favor creditors over the government. *Id.* at 9634. Moreover, in its analysis of the IRS' alleged failure to seize company assets, the court failed to consider the separate liabilities of the company and of the responsible person, therefore, this court believes that *Balzer* and *Reph* are the

better and more fully reasoned cases. Accordingly, the court declines to rule that the IRS was required to levy on the assets of ASM prior to or in the alternative to seeking recovery from Rocha as a responsible person.

Plaintiff has failed to create a material issue of fact with respect to the issue of willfulness. Accordingly, defendant's motion for summary judgment should be granted with respect to this issue.

### III. Other Issues

Defendant initially moved for summary judgment on the issue of the application of credits made by the IRS to plaintiffs' account. However, in its reply brief, defendant acknowledged that there is a question of fact with respect to this issue and therefore defendant withdrew it's motion with respect to this issue.

### CONCLUSION

Defendant's motion for summary judgment (# 21) is granted in part and withdrawn in part.

IT IS SO ORDERED.