**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 10-2230**

UNITED STATES OF AMERICA,

             Plaintiff – Appellant,

     v.

J. BRYAN WILLIAMS,

             Defendant – Appellee.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.   Liam O'Grady, District Judge.  (1:09-cv-00437-LO-TRJ)

Argued:  March 21, 2012                Decided:  July 20, 2012

Before MOTZ, SHEDD, and AGEE, Circuit Judges.

Reversed by unpublished opinion.  Judge Shedd wrote the majority opinion, in which Judge Motz concurred.  Judge Agee wrote a dissenting opinion.

**ARGUED:** Robert William Metzler, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellant.   David Harold Dickieson, SCHERTLER & ONORATO, LLP, Washington, D.C., for Appellee.  **ON BRIEF:** John A. DiCicco, Acting Assistant Attorney General, Deborah K. Snyder, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Neil H. MacBride, United States Attorney, Alexandria, Virginia, for Appellant.   Lisa H. Schertler, SCHERTLER & ONORATO, LLP, Washington, D.C., for Appellee.

Unpublished opinions are not binding precedent in this circuit.

SHEDD, Circuit Judge:

The Government brought this action seeking to enforce civil penalties assessed against J. Bryan Williams for his failure to report his interest in two foreign bank accounts for tax year 2000, in violation of 31 U.S.C. § 5314. Following a bench trial, the district court entered judgment in favor of Williams. The Government now appeals. Because we conclude that the district court clearly erred in finding that the Government failed to prove that Williams willfully violated § 5314, we reverse.

I

Federal law requires taxpayers to report annually to the Internal Revenue Service ("IRS") any financial interests they have in any bank, securities, or other financial accounts in a foreign country. 31 U.S.C. § 5314(a). The report is made by filing a completed form TD F 90-22.1 ("FBAR") with the Department of the Treasury.[1] See id. § 5314; 31 C.F.R. § 1010.350. The FBAR must be filed on or before June 30 of each

---

[1] TD F 90-22.1, which is a form issued by the Department of the Treasury, is titled "Report of Foreign Bank and Financial Accounts" and is commonly referred to as the "FBAR." The regulations relating to the FBAR were formerly published at 31 C.F.R. §§ 103.24 and 103.27, but were recodified in a new chapter effective March 1, 2011. See Transfer & Reorganization of Bank Secrecy Act Regulations, 75 Fed. Reg. 65806 (Oct. 26, 2010). For ease, our citations are to the recodified sections.

calendar year with respect to foreign financial accounts maintained during the previous calendar year, 31 C.F.R. § 1010.306(c), and the Secretary of the Treasury may impose a civil money penalty on any person who fails to timely file the report, 31 U.S.C. § 5321(a)(5)(A). Moreover, in cases where a person "willfully" fails to file the FBAR, the Secretary may impose an increased maximum penalty, up to $100,000 or fifty percent of the balance in the account at the time of the violation. Id. § 5321(a)(5)(C). The authority to enforce such assessments has been delegated to the IRS. 31 C.F.R. § 1010.810(g).

In 1993, Williams opened two Swiss bank accounts in the name of ALQI Holdings, Ltd., a British Corporation (the "ALQI accounts"). From 1993 through 2000, Williams deposited more than $7,000,000 into the ALQI accounts, earning more than $800,000 in income on the deposits. However, for each of the tax years during that period, Williams did not report to the IRS the income from the ALQI accounts or his interest in the accounts, as he was required to do under § 5314.

By the fall of 2000, Swiss and Government authorities had become aware of the assets in the ALQI accounts. Williams retained counsel and on November 13, 2000, he met with Swiss authorities to discuss the accounts. The following day, at the

4

request of the Government, the Swiss authorities froze the ALQI accounts.

Relevant to this appeal, Williams completed a "tax organizer" in January 2001, which had been provided to him by his accountant in connection with the preparation of his 2000 federal tax return. In response to the question in the tax organizer regarding whether Williams had "an interest in or a signature or other authority over a bank account, or other financial account in a foreign country," Williams answered "No." J.A. 111. In addition, the 2000 Form 1040, line 7a in Part III of Schedule B asks:

> At any time during 2000, did you have an interest in or a signature or other authority over a financial account in a foreign country, such as a bank account, securities account, or other financial account? See instructions for exceptions and filing requirements for Form TD F 90-22.1.

J.A. 131. On his 2000 federal tax return, Williams checked "No" in response to this question, and he did not file an FBAR by the June 30, 2001, deadline.

Subsequently, upon the advice of his attorneys and accountants, Williams fully disclosed the ALQI accounts to an IRS agent in January 2002. In October 2002 he filed his 2001 federal tax return on which he acknowledged his interest in the ALQI accounts. Williams also disclosed the accounts to the IRS in February 2003 as part of his application to participate in

5

the Offshore Voluntary Compliance Initiative.[2] At that time he also filed amended returns for 1999 and 2000, which disclosed details about his ALQI accounts.

In June 2003, Williams pled guilty to a two-count superseding criminal information, which charged him with conspiracy to defraud the IRS, in violation of 18 U.S.C. § 371, and criminal tax evasion, in violation of 26 U.S.C. § 7201, in connection with the funds held in the ALQI accounts from 1993 through 2000. As part of the plea, Williams agreed to allocute to all of the essential elements of the charged crimes, including that he unlawfully, willfully, and knowingly evaded taxes by filing false and fraudulent tax returns on which he failed to disclose his interest in the ALQI accounts. In exchange for his allocution, Williams received a three-level reduction under the Sentencing Guidelines for acceptance of responsibility.[3]

In his allocution, Williams admitted the following:

------

[2] The IRS rejected the application and turned it over to the attorney for the United States who was conducting a grand jury investigation of Williams.

[3] Williams also agreed to pay all taxes and criminal penalties due for tax years 1993 through 2000, but he has since refused to pay some of those taxes and penalties and has engaged the IRS in litigation over that issue. See Williams v. Commissioner of Internal Revenue, 97 T.C.M. (CCH) 1422 (Apr. 16, 2009).

6

I knew that most of the funds deposited into the Alqi accounts and all the interest income were taxable income to me. However, the calendar year tax returns for '93 through 2000, I chose not to report the income to my -- to the Internal Revenue Service in order to evade the substantial taxes owed thereon, until I filed my 2001 tax return.

I also knew that I had the obligation to report to the IRS and/or the Department of the Treasury the existence of the Swiss accounts, but for the calendar year tax returns 1993 through 2000, I chose not to in order to assist in hiding my true income from the IRS and evade taxes thereon, until I filed my 2001 tax return.

. . . .

I knew what I was doing was wrong and unlawful. I, therefore, believe that I am guilty of evading the payment of taxes for the tax years 1993 through 2000. I also believe that I acted in concert with others to create a mechanism, the Alqi accounts, which I intended to allow me to escape detection by the IRS. Therefore, I am -- I believe that I'm guilty of conspiring with the people would (sic) whom I dealt regarding the Alqi accounts to defraud the United States of taxes which I owed.

J.A. 55 (emphasis added).

In January 2007, Williams finally filed an FBAR for each tax year from 1993 through 2000. Thereafter, the IRS assessed two $100,000 civil penalties against him, pursuant to § 5321(a)(5), for his failure to file an FBAR for tax year 2000.[4] Williams failed to pay these penalties, and the Government

---

[4] The statute of limitations for assessing penalties for tax years 1993 through 1999 had expired by the time the IRS assessed the civil penalties. See 31 U.S.C. § 5321(b)(1) and (2).

7

brought this enforcement action to collect them. Following a bench trial, the district court entered judgment in favor of Williams, finding that the Government failed to establish that Williams willfully violated § 5314. The Government timely appealed.

II

The parties agree that Williams violated § 5314 by failing to timely file an FBAR for tax year 2000. The only question is whether the violation was willful. The district court found that (1) Williams "lacked any motivation to willfully conceal the accounts from authorities" because they were already aware of the accounts and (2) his failure to disclose the accounts "was not an act undertaken intentionally or in deliberate disregard for the law, but instead constituted an understandable omission given the context in which it occurred."[5] J.A. 378-79. Therefore,

---

[5] In making its determination, the district court emphasized Williams's motivation rather than the relevant issue of his intent. See Am. Arms Int'l v. Herbert, 563 F.3d 78, 83 (4th Cir. 2009) ("[M]alice or improper motive is not necessary to establish willfulness."). To the extent the district court focused on motivation as proof of the lack of intent, it simply drew an unreasonable inference from the record. In November 2000, Swiss authorities met with Williams to discuss the ALQI accounts and thereafter froze them at the request of the United States Government. Although the Government knew of the existence of the accounts, nothing in the record indicates that, when the accounts were frozen, the Government knew the extent, control, or degree of Williams's interest in the accounts or the total
(Continued)

the district court found that Williams's violation of § 5314 was not willful.

"Willfulness may be proven through inference from conduct meant to conceal or mislead sources of income or other financial information," and it "can be inferred from a conscious effort to avoid learning about reporting requirements." United States v. Sturman, 951 F.2d 1466, 1476 (6th Cir. 1991) (internal citations omitted) (noting willfulness standard in criminal conviction for failure to file an FBAR). Similarly, "willful blindness" may be inferred where "a defendant was subjectively aware of a high probability of the existence of a tax liability, and purposefully avoided learning the facts point to such liability." United States v. Poole, 640 F.3d 114, 122 (4th Cir. 2011) (affirming criminal conviction for willful tax fraud where tax preparer "closed his eyes to" large accounting

---

funds held in the accounts. As Williams admitted in his allocution, his decision not to report the accounts was part of his tax evasion scheme that continued until he filed his 2001 tax return. Thus, his failure to disclose information about the ALQI accounts on his 2000 tax return in May 2001 was motivated by his desire not to admit his interest in the accounts, even after authorities had been aware of them for over six months. Rarely does a person who knows he is under investigation by the Government immediately disclose his wrongdoing because he is not sure how much the Government knows about his role in that wrongdoing. Thus, without question, when Williams filed in May of 2001, he was clearly motivated not to admit his interest in the ALQI accounts.

9

discrepancies). Importantly, in cases "where willfulness is a statutory condition of civil liability, [courts] have generally taken it to cover not only knowing violations of a standard, but reckless ones as well." Safeco Ins. Co. of America v. Burr, 551 U.S. 47, 57 (2007) (emphasis added).Whether a person has willfully failed to comply with a tax reporting requirement is a question of fact. Rykoff v. United States, 40 F.3d 305, 307 (9th Cir. 1994); accord United States v. Gormley, 201 F.3d 290, 294 (4th Cir. 2000) ("[T]he question of willfulness is essentially a finding of fact.").

We review factual findings under the clearly erroneous standard set forth in Federal Rule of Civil Procedure 52(a). Walton v. Johnson, 440 F.3d 160, 173-74 (4th Cir. 2006) (en banc). "Our scope of review is narrow; we do not exercise de novo review of factual findings or substitute our version of the facts for that found by the district court." Id. at 173. "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." Id. (quoting Anderson v. City of Bessemer City, 470 U.S. 564, 573-74 (1985)). However, notwithstanding our circumscribed review or the deference we give to a district court's findings, those findings are not conclusive if they are

10

"plainly wrong." Id. (quoting Jiminez v. Mary Washington College, 57 F.3d 369, 379 (4th Cir. 1995)). The clear error standard still requires us to engage in "meaningful appellate review," United States v. Abu Ali, 528 F.3d 210, 261 (4th Cir. 2008), and where objective evidence contradicts a witness' story, or the story itself is "so internally inconsistent or implausible on its face that a reasonable factfinder would not credit it, . . . the court of appeals may well find clear error even in a finding purportedly based on a credibility determination." United States v. Hall, 664 F.3d 456, 462 (4th Cir. 2012) (citing Anderson, 470 U.S. at 575). Thus, "[a] finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed." F.C. Wheat Maritime Corp. v. United States, 663 F.3d 714, 723 (4th Cir. 2011).

Here, the evidence as a whole leaves us with a definite and firm conviction that the district court clearly erred in finding that Williams did not willfully violate § 5314. Williams signed his 2000 federal tax return, thereby declaring under penalty of perjury that he had "examined this return and accompanying schedules and statements" and that, to the best of his knowledge, the return was "true, accurate, and complete." "A taxpayer who signs a tax return will not be heard to claim

11

innocence for not having actually read the return, as he or she is charged with constructive knowledge of its contents." Greer v. Commissioner of Internal Revenue, 595 F.3d 338, 347 n. 4 (6th Cir. 2010); United States v. Doherty, 233 F.3d 1275, 1282 n.10 (11th Cir. 2000) (same). Williams's signature is prima facie evidence that he knew the contents of the return, United States v. Mohney, 949 F.2d 1397, 1407 (6th Cir. 1991), and at a minimum line 7a's directions to "[s]ee instructions for exceptions and filing requirements for Form TD F 90-22.1" put Williams on inquiry notice of the FBAR requirement.

Nothing in the record indicates that Williams ever consulted Form TD F 90-22.1 or its instructions. In fact, Williams testified that he did not read line 7a and "never paid any attention to any of the written words" on his federal tax return. J.A. 299. Thus, Williams made a "conscious effort to avoid learning about reporting requirements," Sturman, 951 F.2d at 1476, and his false answers on both the tax organizer and his federal tax return evidence conduct that was "meant to conceal or mislead sources of income or other financial information," id. ("It is reasonable to assume that a person who has foreign bank accounts would read the information specified by the government in tax forms. Evidence of acts to conceal income and financial information, combined with the defendant's failure to pursue knowledge of further reporting requirements as suggested

12

on Schedule B, provide a sufficient basis to establish willfulness on the part of the defendant."). This conduct constitutes willful blindness to the FBAR requirement. Poole, 640 F.3d at 122 ("[I]ntentional ignorance and actual knowledge are equally culpable under the law.")

Williams's guilty plea allocution further confirms that his violation of § 5314 was willful. During that allocution, Williams acknowledged that he willfully failed to report the existence of the ALQI accounts to the IRS or Department of the Treasury as part of his larger scheme of tax evasion. This failure to report the ALQI accounts is an admission of violating § 5314, because a taxpayer complies with § 5314 by filing an FBAR with the Department of the Treasury. In light of his allocution, Williams cannot now claim that he was unaware of,[6]

---

[6] In fact, seven months before his criminal allocution, Williams sent a letter to the IRS requesting to participate in the Offshore Voluntary Compliance Initiative "[p]ursuant to Rev. Proc. 2003-11." J.A. 183-84. On the first page of Revenue Procedure 2003-11, the IRS specifically informs applicants that a primary benefit of the Initiative is that participating taxpayers can avoid penalties for having failed to timely file an FBAR. Clearly, Williams was aware of the FBAR at the time of his allocution. Further, to the extent Williams asserts he was unaware of the FBAR requirement because his attorneys or accountants never informed him, his ignorance also resulted from his own recklessness. Williams concedes that from 1993-2000 he never informed his accountant of the existence of the foreign accounts – even after retaining counsel and with the knowledge that authorities were aware of the existence of the accounts.

13

inadvertently ignored, or otherwise lacked the motivation to willfully disregard the FBAR reporting requirement.

Thus, we are convinced that, at a minimum, Williams's undisputed actions establish reckless conduct, which satisfies the proof requirement under § 5314. Safeco Ins., 551 U.S. at 57. Accordingly, we conclude that the district court clearly erred in finding that willfulness had not been established.

III

For the foregoing reasons, we reverse the judgment of the district court and remand this case for proceedings consistent with this opinion.

REVERSED

AGEE, Circuit Judge, dissenting:

The majority correctly recites that we review only for clear error the district court's dispositive factual finding that Williams' failure to file the FBAR was not willful. Maj. Op. at 9-10. The majority also correctly notes the limited scope of review under that standard. Id. In my view, however, my colleagues in the majority do not adhere to that standard, instead substituting their judgment for the judgment of the district court. As appellate judges reviewing for clear error, we are bound by the standard of review and therefore I respectfully dissent.

We recently explained how circumscribed our review under the clear error standard must be:

> "This standard plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently." Anderson v. Bessemer City, 470 U.S. 564, 573 (1985). "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." Id. at 573-74.
>
> "When findings are based on determinations regarding the credibility of witnesses," we give "even greater deference to the trial court's findings." Id. at 575.

United States v. Hall, 664 F.3d 456, 462 (4th Cir. 2012). Applying this standard to the case at bar, I conclude the district court's judgment should be affirmed.

15

The majority opinion rightly points out that there is evidence supporting the conclusion that Williams' failure to file the FBAR was willful, particularly if adopting the majority's conclusion that a "willful violation" can include "willful blindness to the FBAR requirement" or "intentional ignorance." Maj. Op. at 12. That evidence could have led a reasonable factfinder to conclude that the violation was willful, as the majority believes.[1]

But there is also evidence supporting the opposite view. First, there is Williams' direct testimony that he was unaware of the FBAR requirement in June 2001 (when it was supposed to be filed) and that he did not willfully (or recklessly) fail to file it. The district judge, who had the opportunity to observe Williams' demeanor while testifying, expressly found that "Williams' testimony that he only focused on the numerical calculations on the Form 1040 and otherwise relied on his accountants to fill out the remainder of the Form is credible . . . ." J.A. 379.

---

[1] Some of that evidence, of course, is subject to two interpretations. For example, the majority reasons that Williams' reference in his allocution to the "Department of the Treasury" is necessarily an admission he violated § 5314. Because the IRS is a bureau of the Department of the Treasury, however, the reference in his plea could instead be interpreted as a simple acknowledgement of that fact. Indeed, there was no reference in the criminal proceedings to Section 5314 or the FBAR at all.

Significantly, the district court also found that there was no objective incentive for Williams to continue to conceal the ALQI account in June 2001, because at that time he knew that the United States government had requested the ALQI accounts be frozen, and thus Williams knew the United States government knew about those accounts. As the district court reasoned, if Williams had known about the FBAR requirement, there would have been little incentive for him under those circumstances to refuse to comply with it as of June 2001.

Additional evidence supporting the district court's finding includes the undisputed evidence that, after June 2001, Williams and his advisors began formal disclosures of the ALQI accounts, including the filing of amended income tax returns, but they did not backfile FBAR reports. These disclosures included direct disclosures of the ALQI accounts to the IRS in January 2002. The district court explained the significance of this disclosure to the IRS: "[t]hough made after the June 30, 2001" FBAR filing deadline, the disclosure "indicates to the Court that Williams continued to believe the assets had already been disclosed. That is, it makes little sense for Williams to disclose the ALQI accounts merely six months after the deadline he supposedly willfully violated." J.A. 378. This was a logical and supported finding for the district court to make on the record before it.

The district court's decision was set forth in a detailed opinion that fully explained the evidence supporting its findings. Had I been sitting as the trier of fact in this bench trial, I may well have decided differently than did the district judge. But I cannot say that I am left with a "definite and firm conviction" that he was mistaken. Thus, I cannot agree with the majority that the Government has established clear error.

I also address briefly the two other grounds for reversal asserted by the United States and rejected by the district court: collateral estoppel and judicial estoppel.[2] Specifically, the Government points to Williams' criminal conviction and, in particular, the language in his plea allocution, see Maj. Op. at 6, as requiring a finding that both types of estoppel apply. I disagree.

We review the district court's denial of judicial estoppel only for abuse of discretion, see Jaffe v. Accredited Sur. & Cas. Co., 294 F.3d 584, 595 n.7 (4th Cir. 2002), and its denial of collateral estoppel de novo, Tuttle v. Arlington Cnty. Sch. Bd., 195 F.3d 698, 703 (4th Cir. 1999).

_____

[2] In light of its holding that the district court clearly erred in finding the violation not willful, the majority did not have cause to address either estoppel argument. Because I would affirm the district court and the Government contends that both types of estoppel prevent Williams from challenging the willfulness of his violation, it is necessary to address those points.

18

Judicial estoppel generally requires three elements:

First, the party sought to be estopped must be seeking to adopt a position that is inconsistent with a stance taken in prior litigation. The position at issue must be one of fact as opposed to one of law or legal theory. Second, the prior inconsistent position must have been accepted by the court. Lastly, the party against whom judicial estoppel is to be applied must have intentionally misled the court to gain unfair advantage.

Zinkand v. Brown, 478 F.3d 634, 638 (4th Cir. 2007) (citations and internal quotations omitted).

Similarly, a party seeking to apply collateral estoppel must establish five elements:

(1) the issue sought to be precluded is identical to one previously litigated; (2) the issue [was] actually determined in the prior proceeding; (3) determination of the issue [was] a critical and necessary part of the decision in the prior proceeding; (4) the prior judgment [is] final and valid; and (5) the party against whom estoppel is asserted . . . had a full and fair opportunity to litigate the issue in the previous forum.

Sedlack v. Braswell Servs. Grp., Inc., 134 F.3d 219, 224 (4th Cir. 1998); Collins v. Pond Creek Mining Co., 468 F.3d 213, 217 (4th Cir. 2006). "The doctrine . . . may apply to issues litigated in a criminal case which a party seeks to relitigate in a subsequent civil proceedings . . . . [For example], a defendant is precluded from retrying issues necessary to his plea agreement in a later civil suit." United States v. Wight, 839 F.2d 193, 196 (4th Cir. 1987).

In my view, the district court correctly concluded that

19

> there remains a factual incongruence between those facts necessary to [Williams'] guilty plea to tax evasion and those establishing a willful violation of § 5314. That Williams intentionally failed to report income in an effort to evade income taxes is a separate matter from whether Williams specifically failed to comply with disclosure requirements contained in § 5314 applicable to the ALQI accounts for the year 2000.

J.A. 379. Put differently, Williams never allocuted to failing to file the FBAR form, and certainly did not admit willfully failing to file it. Neither his plea agreement nor his allocution even referred to the FBAR or § 5314. Indeed, the Treasury Department itself notes that the FBAR is a separate reporting requirement and not a tax return, nor is it to be attached to a taxpayer's tax returns. See J.A. 225, 237, 246. In short, pleading guilty to hiding the existence of the two accounts for income tax purposes does not necessarily establish that Williams willfully failed to file a FBAR for 2000. Indeed, other separate and distinct tax penalties (including penalties for fraud) were separately sought by the IRS from Williams for his failure to report the income in the accounts, pursuant to 26 U.S.C. §§ 6662 and 6663. See Williams v. Comm'r of Internal Revenue, 97 T.C.M. (CCH) 1422, *4 (Apr. 16, 2009). The FBAR-related penalty is not a tax penalty, but a separate penalty for separate conduct.

Thus, viewed as distinct issues, collateral estoppel is inapplicable here because Williams' willfulness in failing to

20

file the FBAR is not an issue "identical to one previously litigated." Sedlack, 134 F.3d at 224. Likewise, judicial estoppel is inapplicable because there is nothing about Williams' stance on willfulness here that is "inconsistent with [the] stance taken" in his criminal proceedings. Zinkand, 478 F.3d at 638. Accordingly, I would further hold that the district court did not err in declining to apply either collateral estoppel or judicial estoppel.

For all of these reasons, I respectfully dissent and would affirm the judgment of the district court.